Thomas APANOVICH, Plaintiff, Appellant,

v.

Ray WRIGHT, Defendant, Appellee.

No. 5002.

United States Court of Appeals First Circuit.

Nov. 2, 1955.

Bartolo M. Siciliano, Dexter, Me., for appellant.

Lloyd H. Stitham, Pittsfield, Me., with whom F. Harold Dubord, Waterville, Me., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The original complaint here was brought to recover damages for personal injuries suffered by the plaintiff as a result of the explosion of some gasoline in a building owned and possessed by the defendant in Troy, Maine. It was an ordinary common law action for negligence. Jurisdiction was rested on diversity of citizenship. Defendant filed an answer denying the allegations of the complaint, pleading contributory negligence, and seeking recovery against the plaintiff by way of counterclaim for alleged negligence of the plaintiff in causing the said building to be set on fire and totally destroyed; to which counterclaim the plaintiff filed a reply denying each and every allegation therein. Subsequently, upon leave granted, the plaintiff amended his complaint to add a statutory count based upon the alleged violation by the defendant of certain fire regulations relating to gasoline and other flammable liquids issued by the Insurance Department of the State of Maine pursuant to authority conferred in C. 85, § 42, Maine Rev.Stat.(1944). Defendant answered the amended complaint by denying its principal allegations, and by re-alleging contributory negligence on the part of the plaintiff.

After all the evidence was in, the district court directed the jury to report a verdict for the defendant on the complaint and amended complaint, and also to report a verdict for the plaintiff on the defendant's counterclaim. Verdicts were so reported and judgments were entered accordingly. The plaintiff appealed from the adverse judgment on the complaint and amended complaint. No appeal was taken by the defendant from the adverse judgment on his counterclaim.

It appears that the defendant owned and possessed in Troy, Maine, a certain frame house which he designed ultimately for use as a permanent residence, but which meanwhile was used as an occasional hunting lodge. In the latter part of November, 1952, William G. Lessard, defendant's son-in-law, obtained permission from the defendant to make use of the hunting lodge with a party of friends, of whom the plaintiff happened to be one.

En route to the lodge Lessard stopped at defendant's home in Pittsfield, Maine, and, as had been his practice, there obtained and filled with water several glass gallon jugs—this without the specific knowledge or authority of the defendant, who was not at home at the time. Lessard and the rest of his party took these jugs of water to the cabin on November 19, 1952, and Lessard there placed the water jugs, or some of them, under the sink in the single large room of the cabin alongside another glass gallon jug

apparently of the same size and shape. This other jug, with a screw cap on it, contained "white gasoline," which the defendant for some time past had kept and maintained in the cabin for use in connection with a "two-Colman gasoline stove."

Shortly after their arrival Lessard, engaged in building a fire in the wood stove, picked up the jug containing white gasoline and was about to pour its contents on the pieces of wood in the stove to facilitate starting the fire when he raised the jug to his nose and smelled the contents. He remarked then that the jug contained gasoline, screwed the cap back on, and replaced it under the sink. Plaintiff testified that he did not hear this remark about the gasoline. Lessard then picked up a bottle containing kerosene and poured some of its contents on the fire.

In the course of the evening on November 19 the defendant paid a brief visit to the party in the lodge and was introduced to all those present, including the plaintiff, whom he had not known before. During this visit defendant did not happen to mention to anybody that he had a jug of white gasoline in the room.

On the next day, while plaintiff was alone in the cabin, he proceeded to heat up some water in a large kettle on the stove for the purpose of washing up the luncheon dishes. After pouring water into the kettle from several partially empty jugs he needed still more water, and so he picked up the jug which contained the white gasoline, which is a colorless liquid, indistinguishable visually from water. The evidence was uncontradicted that for a number of years plaintiff had suffered from the lack of any sense of smell. Evidently not realizing what the jug contained, he poured its contents into the kettle on the hot stove. After replacing this jug on the shelf, and turning again toward the stove he observed a "blue flame dancing around the kettle" and in a split second an explosion occurred, from which the plaintiff suffered severe burns. The re-sulting fire burned the cabin to the ground.

With respect to the common law cause of action for negligence, as set forth in the original complaint, the district court, after referring to the stipulation to the effect that the status of the plaintiff on the premises was that of a gratuitous licensee, spoke to the jury as follows:

"In that situation, the defendant owed a duty to the plaintiff not to do anything wantonly, wilfully, or intentionally to cause any injury to him. Conceding the credibility of the witnesses for the plaintiff, and giving full effect to every legitimate inference that may be adduced from their testimony, it is, nevertheless, plain that there was no breach of this duty by the defendant, and therefore, the plaintiff has not made out a case sufficient in law to entitle him to a verdict or judgment thereon. I, therefore, direct that you shall return a verdict for the defendant in the action brought by the plaintiff."

The local law in Maine seems to be as the district judge stated it. See Kidder v. Sadler, 1918, 117 Me. 194, 103 A. 159; Robitaille v. Maine Central R. Co., 1952, 147 Me. 269, 86 A.2d 386. We do not understand that appellant has contended to the contrary. The district judge committed no error in directing a verdict for the defendant on the original complaint.

The serious point on this appeal is whether error was committed in directing a verdict for the defendant on the statutory count contained in the amended complaint.

In § 42 of C. 85, Me.Rev.Stat.(1944), the legislature authorized the insurance commissioner, after due notice and public hearing, to issue "reasonable rules and regulations for the keeping or transporting from place to place in the state of all gunpowder, petroleum, coal oils, burning fluids, naphtha, benzine, and all other explosives and illuminating substances which such commissioner believes *dan-*

*gerous to the lives or safety of citizens."* [Italics added.] Any regulations so issued were to become effective "when approved in writing by the governor and council and when a certified copy thereof has been filed with the secretary of state." It was further provided that any person aggrieved by any such regulation or the reasonableness of the same may present his case to a justice of the superior court, who was empowered to "affirm or reverse" the challenged regulation, "and the decision of such justice shall be final." Section 42 concluded with a paragraph imposing a criminal penalty for each offense by any person in keeping or transporting any such article except as prescribed in the insurance commissioner's regulations.

If the legislature had stopped there, merely imposing criminal penalties and not dealing with civil liability, the inquiry would have been how far the Maine courts have gone, in molding their doctrines of the common law of torts, in imposing a civil liability in favor of an individual who has suffered damage in consequence of a criminal violation. Whether the Supreme Judicial Court of Maine would treat the criminal violation as "negligence per se," or "merely evidence of negligence," see Jones v. Cooperative Ass'n of America, 1912, 109 Me. 448, 84 A. 985, L.R.A.1915E, 745, would probably make no difference, for in either case proof of the criminal violation would merely facilitate the plaintiff's establishment of negligence; and if by the local common law the occupier of the premises owed no duty of ordinary care to the particular gratuitous licensee, then proof of mere negligence, no matter how established, would be insufficient to make out a case for tort liability. In other words, the legislative action, dealing only with criminal consequences, would presumably not be interpreted as intending to redefine and enlarge the Maine common law duty toward a gratuitous licensee, which is merely to refrain from inflicting wanton or willful injury upon him.

However, the legislature here did undertake to go on and deal with civil liabilities. In the very next section, § 43, it was provided: "A person injured by the explosion of such articles in the possession of any person contrary to such regulations has an action for damages against such possessor, or against the owner if conusant of such neglect."

A fragmentary enactment like § 43, dealing not at all with defenses, would presumably be interpreted as intended to be fitted into the common law background, imposing merely a prima facie liability, but leaving the courts free to apply familiar common law rules, including the defense of contributory negligence and common law notions of proximate cause. However, it is difficult to escape the conclusion that the legislature created duties to all the persons intended to be safeguarded by regulations designed to eliminate practices deemed to be "dangerous to the lives or safety of citizens." While perhaps it would be read into § 43 that such duties were not intended to run in favor of trespassers, the unqualified language, giving an action of damages to "a person injured" by an explosion resulting from the keeping of such substances in a manner forbidden by the regulations, would certainly seem to embrace any person rightfully on the premises, including a gratuitous licensee.

That brings us to the inquiry whether the defendant violated any of the provisions of the regulations. Appellee in his brief has made some attack upon the regulations as being "not reasonable" and "impossible of understanding." It may be that the reasonableness of the regulations can be attacked only in the manner prescribed in § 42 (*i. e.*, by a petition to a judge of the superior court), not in a proceeding like the present one. However that may be, so far as concerns the rules having a bearing on the present case, it is not apparent to us that those particular regulations are either unreasonable or unintelligible. Rule 51 provides clearly enough that the storage in "frame buildings," in any amount, of

Class I liquids (which by definition includes gasoline) is prohibited. That would seem to cover the facts of the present case. Rule 52 provides that portable containers of Class I liquids "shall be painted red (entire container or conspicuous band or stripe) and be conspicuously lettered in black, 'Dangerous—Keep Lights and Fires Away and Store Outside Building.'" Apart from a possible qualification about to be mentioned, it is clear that these provisions of both Rules 51 and 52 were violated by the defendant in the present case. The jug containing white gasoline was habitually kept by the defendant in his hunting lodge, which was a frame building. The jug did not contain the required conspicuous markings. The testimony was overwhelming both from witnesses for the plaintiff and witnesses for the defendant, that the jug had pieces of adhesive tape sticking on both sides, on which was written in black crayon the legend "White Gasoline," though plaintiff testified that he did not see such markings. The jury might have inferred that these markings, if they were present, as probably they were, were not particularly conspicuous, in view of the fact that Lessard, who was familiar with the premises, picked up the jug by mistake, and then by sniffing it discovered that it contained gasoline. At any rate it is clear that the jug was not marked in the specially conspicuous way required by Rule 52.

We note that Rule 1b contains the provision that these rules and regulations "shall not apply to existing buildings, plants, structures or equipment now used for flammable liquids unless the insurance commissioner shall determine the conditions constitute a distinct hazard." We are unable to determine from the record whether this rule has any application to the case at bar. Also, we have found no recital in the record to the effect that these rules and regulations were ever approved by the governor and council and a certified copy thereof filed with the secretary of state, which were statutory conditions precedent to their coming into effect.

In explaining to the jury why he had determined to direct a verdict for the defendant on the amended complaint, the district judge made the following statement:

> "Assuming, without deciding, that the evidence when viewed most favorably to the plaintiff does establish a violation of the statute, it is still incumbent upon the plaintiff to establish that the violation of the statute was the sole proximate cause of the harm, or injury which befell him. If there was an intervening, efficient human agency which produced the harm which befell the plaintiff, the defendant is relieved of liability. In the case which you have before you for consideration, I find, after giving all benefit to the plaintiff of any inferences favorable to him which may be drawn from the evidence, that his own conduct was the efficient, intervening, cause of the harm which befell him."

We too shall assume, without deciding, that the defendant violated the applicable regulations, and thus the statute. So assuming, we do not think the district judge was right in his foregoing ruling on proximate cause. In the recent case of Socony-Vacuum Oil Co., Inc. v. Marshall [Marshall v. Nugent], 1 Cir., 1955, 222 F.2d 604, 610–613, we tried to state what we understood to be the basic thought behind the judicial expressions relating to "proximate cause," a somewhat misleading phrase. We pointed out, 222 F.2d at pages 610–611, that

> "to establish liability it is not necessarily true that the defendant's culpable act must be shown to have been the next or immediate cause of the plaintiff's injury. In many familiar instances, the defendant's act may be more remote in the chain of events; and the plaintiff's injury may more immediately have been caused by an intervening force of nature, or an intervening act of a third person whether culpable or not, or even an act by the plaintiff bringing himself in contact with the

dangerous situation resulting from the defendant's negligence."

What risks "to the lives or safety of citizens" may we suppose that the commissioner thought would be minimized by observance of the rules forbidding the storage of gasoline in "frame dwellings," and requiring gasoline containers to be marked in such a conspicuous way, with a specific warning legend? May we not deduce that the commissioner had in mind the risk, among others, that someone might cause an explosion and fire, with resulting personal injuries and property damage, by misuse of the dangerous liquid in ignorance of what it was? When the very risk which it was an objective of the administrative regulations to prevent operates to cause the harm, there can in the nature of things be no difficulty of proximate causation. On the evidence in the case at bar it could be found that, had the defendant observed the requirements of the regulations, the plaintiff would not have unwittingly brought the gasoline into dangerous proximity to the fire.

We do not read the statement by the district judge as implying a finding on his part that the plaintiff caused the explosion by his own contributory negligence. It seems the district judge did not have this in mind, since he ruled as a matter of law that the plaintiff was not liable on the counterclaim for burning down the lodge, which ruling he could hardly have made if he thought that the plaintiff had been guilty of negligence in causing the explosion and fire. Furthermore, contributory negligence of the plaintiff, if that was properly an issue on the amended complaint, presented on this record a debatable question of fact for the jury. A verdict for the defendant could not have been directed on the ground that the plaintiff was guilty of contributory negligence as a matter of law.

The judgment of the District Court is vacated and the case is remanded to that Court for further proceedings not inconsistent with this opinion.