Esteban G. LOPEZ, Plaintiff
and Appellant,

v.

UNION PACIFIC RAILROAD CO., American Nutrition, Inc., and Evans Grain and Elevator Co., Defendants and Appellees.

No. 940524.

Supreme Court of Utah.

Feb. 25, 1997.

David B. Havas, Ogden, for plaintiff and appellant.

J. Clare Williams, Morris O. Haggarty, Salt Lake City, for defendant and appellee.

HOWE, Justice:

Plaintiff Esteban G. Lopez appeals from the trial court's grant of summary judgment dismissing his personal injury action against defendant Union Pacific Railroad Co. on the ground that Utah Code Ann. § 56–1–18.5 (1994) bars his action.

"Before we recite the facts, we note that in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993). "We state the facts in this case accordingly." *Id.*

### FACTS

Lopez was an SOS Temporary Services employee at the American Nutrition, Inc. (ANI), plant in Ogden. The plant is located in an industrial area serviced by several sets of railroad spur tracks belonging to the occupants of the adjacent businesses. Some of the tracks run between the buildings and the parking lots, and "cuts" of several railroad cars awaiting switching are sometimes parked on these tracks, blocking access. Workers in the area habitually crossed over the cuts of cars to reach other buildings and the parking lots. Union Pacific Railroad train crews had observed these workers climbing between the parked rail cars, and Railroad management was also aware of the practice. The minutes of a Railroad Safety Committee Meeting on February 6, 1989, noted that employees of ANI and Evans Grain and Elevator Company (Evans) "are crossing between rail cars while cars are being switched. Management of both firms should be made aware of the situation and this practice must be stopped immediately." Union Pacific later noted again that ANI employees were "crawling and jumping through cuts of cars." Apparently, however, neither ANI nor its employees ever received a communication or warning on the subject from the Railroad.

On February 8, 1992, Lopez was working the night shift. He left the plant at about 12:30 a.m. to eat lunch in a vehicle parked in a lot across the railroad tracks from the plant. Meanwhile, a Union Pacific train crew was switching rail cars parked on the spur track belonging to Evans. Before moving the cars, the two crew members who were on the ground looked back along the cut of cars to verify that no one was near. They did not see Lopez. The crew gave no auditory warning by bell or whistle that the cars were

about to be moved. Unaware of the switching operation, Lopez attempted to reach the parking lot by crossing between two of the rail cars. As he was climbing onto or across the coupling mechanism, the cars moved suddenly, throwing him off balance and down onto the rail. The moving train car ran over his legs, both of which were subsequently amputated between the knee and the ankle.

Lopez does not assert that he received express permission to cross between the cars, but stated at deposition, "I would see everybody doing it, so I just did the same thing they did." When questioned whether he could have walked around the train to reach the parking lot, he replied, "I really don't think so, because it was a very long train." The crew members involved testified at deposition that they had been trained to sound a warning in compliance with the Railroad's safety manuals and that they had seen ANI employees climbing between parked rail cars on previous occasions.

Lopez filed this action against Evans, ANI, and Union Pacific Railroad. The trial court granted summary judgment to the Railroad, ruling, "There is no factual dispute that plaintiff did not have express authority to be on the rail car as contemplated in Utah Code Ann. § 56–1–18.5(1); and no evidence that the Railroad intended any injury to plaintiff nor had actual knowledge of plaintiff's presence as contemplated by § 56–1–18.5(2)(a)." Summary judgment was also granted in favor of ANI on the ground that plaintiff had been awarded workers' compensation under coverage carried by SOS Temporary Services and that such award was his exclusive remedy. Lopez settled with Evans and appealed the grants of summary judgment. We summarily affirmed the summary judgment in favor of ANI on the basis that the issues raised on appeal were too insubstantial to merit further proceedings and consideration. We now review the trial court's grant of summary judgment in favor of Union Pacific.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Higgins*, 855 P.2d at 235. We review the trial court's conclusions of law for correctness, granting them no deference. *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). On appeal, "[w]e determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Id.*

## ANALYSIS

The summary judgment awarded Union Pacific Railroad was premised on section 56–1–18.5 of the Utah Code, which at the time of plaintiff's injury provided: [1]

(1) A person other than a railroad employee may not ride or climb or attempt to ride or climb on, off, under, over, or across a locomotive, railroad car, or railroad train without authority from the owner or operator of the railroad.

(2) A person other than a railroad employee who is injured while violating Subsection (1) may not recover damages for his injury from the owner or operator of the railroad unless:

(a) the injury was caused by an intentional act of the owner or operator of the railroad with knowledge of the presence of the person; and

(b)(i) the circumstances under which the injury occurred were such that a reasonable person would believe that serious injury would probably result from the act of the owner or operator of the railroad; or

(ii) the owner or operator of the railroad acted with a wanton and reckless disregard of the probable result of his act.

Plaintiff assails the summary judgment, asserting that while workers at ANI did not have express authority from the Railroad, they had implied or implicit authority to cross between the parked cars because the Railroad parked its trains so that workers had to cross over the cars and that the Railroad knew of that practice but did noth-

---

1. The section was amended in 1995 to substantially change the wording.

ing to discourage it. Plaintiff further contends that the Railroad owed him the common law duty of reasonable care because he and other workers were frequent trespassers on a particular or confined part of Railroad property. Finally, plaintiff asserts that if section 56–1–18.5 is interpreted to bar any action by him against the Railroad, it violates article I, section 11 of the Utah Constitution, commonly referred to as the open courts provision. Union Pacific urges us to affirm summary judgment on the ground that the statute does not recognize implied or implicit authority to be on railroad equipment and therefore the Railroad owed plaintiff no duty of care in the absence of the train crewmen's actual knowledge of his presence.

We need not and do not address whether subsection (1) of the statute requires express authority or whether implied or implicit authority will suffice. We decide this case on other grounds.

■■■ Pursuant to subsection (2), a plaintiff without authority to be upon railroad equipment may nevertheless recover if his injury was caused by an intentional act of the owner or operator of the railroad with knowledge of the presence of the plaintiff and the circumstances under which the injury occurred were such that a reasonable person would believe that serious injury would probably result from the act of the owner or operator. Union Pacific argues that plaintiff cannot recover under that part of the statute because the train crew looked for persons who might be on or near the equipment but saw no one. When the cars began to move, the crew had no knowledge that plaintiff was on the equipment. Union Pacific further asserts that the statute does not alter, but merely codifies, the common law general rule that a trespasser cannot recover unless his presence is known to the landowner and the

owner then willfully or recklessly injures him.[2]

However, the common law recognized an exception to the general rule relied upon by Union Pacific. That exception is succinctly stated in the Restatement (Second) of Torts § 334 (1965):

A possessor of land who knows, or from the facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

This exception, which heightens the duty owed by an owner to a trespasser, has been explained by Prosser and Keeton as recognizing a balance of burden and benefit so that if the "burden is very slight, and the risk of harm to trespassers is correspondingly very great, there may be good reason to hold the defendant liable. This has been true first of all in the case of frequent trespass upon a limited area." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 58, at 395 (5th ed.1984). The burden is decreased if "trespassers in substantial number" habitually enter the land at a particular point, with the knowledge of the occupier of the land, and traverse a small area. *Id.* at 395–96. In that case, "the burden of looking out for them is reduced, and the risk of harm perhaps increased, so that many courts have held that there is a duty of reasonable care" to discover and protect the habitual trespassers in their activities. *Id.* at 396. "The typical case is that of frequent use of a particular part of a railroad track...." *Id.* Therefore, if, as Union Pacific contends, the statute was intended to codify the common law,[3] then we must construe it not to require actual knowledge of this plaintiff's presence but to require only knowledge that persons habitually crossed over or between the cars

**2.** See *Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996), where we indicated our preference for the statement of the duty owed by a possessor of land to a trespasser to be that in Restatement (Second) of Torts § 333 (1965).

**3.** Legislative history supports this assertion. During the debate in the House of Representa-

tives on what became section 56–1–18.5, Representative Jensen, sponsor of the legislation, stated that "the fact of the matter is that it does not change existing law, it merely codifies existing law." Floor Debate, Statement of Rep. Jerrold S. Jensen, 49th Utah Leg., Gen. Sess. (Jan. 31, 1991) (House recording No. 2).

in traversing the area between the buildings and the parking lots.

This exception has always been part of the common law of this state. In *Knutson v. Oregon Short Line Railway Co.*, 78 Utah 145, 2 P.2d 102 (1931), we observed that we had recognized the exception in a number of cases dating back to territorial times. There we wrote:

> The adjudicated cases are not all in harmony as to the nature or extent of the duty which a railroad company owes toward persons who, for their own purposes and without invitation, enter upon its tracks or other premises. All of the cases are agreed that a railroad company may not willfully or wantonly injure persons who are trespassing upon its premises. In some jurisdictions, such is the limit and extent of the duty which a railroad company owes to trespassers. In other jurisdictions, the servants of a railroad company, when operating a moving train, are required to keep a constant lookout ahead for trespassers who may be upon the railroad track. In still other jurisdictions, the rule is recognized that the servants of a railroad company are not required to keep a lookout ahead at places not frequented by people, but that they are required to keep a reasonable lookout ahead for persons who might be upon the tracks at a time when, or a place where, the company knows persons frequently and in considerable numbers use the tracks for either business or pleasure. *This court is committed to the last-mentioned doctrine.* Hyde v. Union Pacific Ry., 7 Utah 356, 26 P. 979; *Young v. Clark*, 16 Utah 42, 50 P. 832; *Corbett v. Oregon S.L.R. Co.*, 25 Utah 449, 71 P. 1065; *Teakle v. San Pedro, L.A. & S.L.R. Co.*, 32 Utah 276, 90 P. 402, 10 L.R.A. (N.S.) 486; *Smalley v. Rio Grande Western R. Co.*, 34 Utah 423, 98 P. 311; *Palmer v. Oregon S.L.R. Co.*, 34 Utah 466, 98 P. 689, 696, 16 Ann. Cas. 229; *Jensen v. Utah Ry. Co.*, 72 Utah 366, 270 P. 349.

*Id.* 2 P.2d at 104 (emphasis added).

Plaintiff produced evidence that workers habitually crossed over the cuts of rail cars to reach the parking lots. Union Pacific on two separate occasions preceding the accident noted that employees of ANI and Evans were crossing between rail cars while cars were being switched and indicated that this practice must be stopped. Plaintiff was injured by the intentional act of the Railroad in moving its cars from a stationary position. Whether "a reasonable person would believe that serious injury would probably result from the act of the owner or operator of the railroad," § 56–1–18.5(2)(b)(i), is a question to be resolved by the trier of the facts. We conclude that plaintiff has presented a prima facie case of liability on the part of Union Pacific and that the trial court erred in granting summary judgment.

The summary judgment in favor of Union Pacific is reversed, and the case is remanded to the trial court for further proceedings.

ZIMMERMAN, C.J., STEWART, Associate Chief Justice, and DURHAM, J., concur in Justice HOWE'S opinion.

RUSSON, Justice, concurring in the result:

I concur in the result of the majority opinion but for an entirely different reason than that stated by the majority.

The statute clearly and unambiguously provides that a person on or about a train without authority cannot recover damages for injury unless the injury was caused by an intentional act of the Railroad with knowledge of the presence of that person and with a reasonable belief that the intentional act would seriously injure that person.

Specifically, the statute provides:

(1) A person other than a railroad employee may not ride or climb or attempt to ride or climb on, off, under, over, or across a locomotive, railroad car, or railroad train without authority from the owner or operator of the railroad.

(2) *A person* other than a railroad employee who is injured while *violating Subsection (1) may not recover damages for his injury from the owner or operator of the railroad unless:*

(a) *the injury was caused by an intentional act of the owner* or operator of the railroad *with knowledge of the presence of the person; and*

(b)(i) *the circumstances under which the injury occurred were such that a reasonable person would believe that serious injury would probably result from the act of the owner or operator of the railroad;* or

(ii) the owner or operator of the railroad acted with a wanton and reckless disregard of the probable result of his act.

Utah Code Ann. § 56–1–18.5 (emphasis added). The statute makes perfectly clear that a person on or about a train without authority who is injured cannot recover unless he can prove that the railroad knew of his presence and, regardless of that knowledge, operated the train with reasonable knowledge that serious injury would probably result to that person.

However, the majority completely disregards the clear requirements of the statute and states that the mere act of moving the train is an intentional act under the statute and such act imposes liability on the Railroad regardless of lack of knowledge of the trespasser. The majority states that knowing of the possibility, due to prior experience with trespassers, that unauthorized persons are present is sufficient to impose liability. The majority's position that the mere act of moving the train is an intentional act contemplated by the statute is disingenuous. The act of driving a car is an intentional act but does not become actionable unless the driver is negligent, and does not become actionable as an intentional tort unless the driver knows of the presence of a person and intentionally drives the vehicle into him knowing the potential for serious injury. Likewise, the intentional act of shooting a gun does not impose liability upon the shooter for an intentional tort unless the shooter knew the victim was present and intended to injure him. The shooter may be liable for negligence in shooting into an area where he knew, or should have known, that people possibly were present, but the intentional act of shooting does not become actionable as

such until connected with knowledge of the presence of a person and the likelihood that he would be seriously injured. Likewise, in this case the statute specifically provides that the intentional act of moving the train is not actionable *unless* the operator or other employees *knew of a person* present *and* operated the train knowing that such movement *would probably seriously injure that person.*

In the case before us, the train crew did not know of the presence of Lopez or any other person when they moved the train and therefore could not have reasonably believed that moving the train would probably seriously injure him. While the Railroad may have been negligent, the statute does not allow for recovery for negligence in the case of an unauthorized person. It allows recovery to such a person only where the railroad knows of his presence and knows that moving the train would probably seriously injure him.

The majority's reason for reversing and remanding this case is flawed. However, I likewise would reverse and remand, but for the reason that there is a question of fact as to whether Lopez was an unauthorized person. He may or may not have had implied authority to cross through the train, and thus, I would remand this case for determination of whether Lopez had implied authority to cut across and/or be in the area of the train at the time and place in question and, if so, whether the Railroad breached its duty to him.