2016 UT App 195

# THE UTAH COURT OF APPEALS

LAWRENCE COLOSIMO AND SARAH JEAN COLOSIMO,
Appellants,

*v.*

GATEWAY COMMUNITY CHURCH,
Appellee.

Opinion
No. 20140852-CA
Filed September 15, 2016

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 120414704

Richard D. Burbidge, Jefferson W. Gross, and Aida
Neimarlija, Attorneys for Appellants

Troy L. Booher, Beth E. Kennedy, Mark Dalton
Dunn, Trystan B. Smith, and Todd A. Turnblom,
Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGE
STEPHEN L. ROTH and SENIOR JUDGE PAMELA T. GREENWOOD
concurred.[1]

TOOMEY, Judge:

¶1 In this opinion we must decide whether the district court
correctly granted summary judgment to Gateway Community
Church (Gateway) in determining Gateway owed no duty to a
trespasser, either imposed by a city ordinance or under common

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

law, and whether the court abused its discretion in its rulings on the parties' motions to strike certain testimony. We affirm.

## BACKGROUND

¶2   In June 2012, sixteen-year-old A.C. and two of his cousins climbed a ladder onto the roof of a building owned by Gateway. The ladder "had a locked box at the bottom to prevent unauthorized individuals from accessing the ladder and roof," and the boys climbed over it by stepping on a nearby box. It is undisputed that the boys climbed onto the roof of the building without permission. Teenagers are known to have gone onto Gateway's roof on two other occasions, once in 2004 and again in 2010.

¶3   While climbing up and exploring, the boys felt electricity on a "panel on the top of the roof." Climbing back down, A.C.'s foot was caught between the ladder and the electrified metal flashing of the roof. A.C. "was in contact with the hot metal flashing for a period of up to ten seconds and received over 200 volts of electricity." He lost consciousness and was taken to the emergency room. He died ten days later from electrocution-related injuries.

¶4   Gateway moved into the building in 1999 and purchased it in 2003. Attached to the building is an electric sign that reads "Welcome to Gateway." Its installation date is unknown, but sometime in 2003 or 2004 Gateway had an acrylic faceplate with its new logo installed in the existing sign cabinet.[2]

---

2. The work order for the sign is dated August 7, 2003, and Gateway's pastor testified that the new faceplate was installed in 2004.

¶5      After the accident, A.C.'s parents had the sign inspected by an electrical engineer. Gateway also inspected the sign, assisted by a drywaller who often helped with inspections, a journeyman mechanic, an apprentice electrician, a Draper City building inspector, an officer from the Draper City police department, and a fire marshal. Ultimately, the inspections revealed that the sign was defectively wired, and, among other things, the wiring used was intended for interior use instead of waterproof conduit appropriate for outdoor use. In addition, the wiring was not grounded and the output lead wires were routed "under the sharp edge of one of the elements of the metal frame of the sign," and were in metal-to-metal contact with the building's flashing.

¶6      Draper City adopted several ordinances (together, the Sign Ordinances) that require "a sign permit prior to the erection, installation, or use of any sign." Draper City, Utah, Ordinance 205, § 9-14-060 (1996), http://sirepub.draper.ut.us/ sirepub/cache/25/gf3msmwz0eb4nzbnmaofo3if/692530826201609 3213861.PDF [https://perma.cc/4UG3-PBMS]. To "protect the safety and welfare of the people of the City," the Sign Ordinances prohibit any sign that "constitutes a hazard to safety or health by reason of inadequate installation, maintenance or dilapidation." *Id.* § 9-14-090(a)(9)(i). All signs must be "maintained in good and safe structural condition, [and] in compliance with all building and electrical codes" at all times. *Id.* § 9-14-070(c)(1)(iii). The Sign Ordinances also provide that any "person, firm or corporation" that violates the Sign Ordinances is "guilty of a Class B misdemeanor," Draper City, Utah, Ordinance 505, § 9-26-070(d) (2003), http://sirepub.draper. ut.us/sirepub/cache/25/gf3msmwz0eb4nzbnzbnma3if/323208262 016094012556.PDF [https://perma.cc/D4T5-ZZMG], and indicate that "[t]he provisions of [the] ordinance[s] shall not be construed to relieve or limit in any way, the responsibility or liability of any person, firm, or corporation which erects or owns any sign,

for personal injury or property damage[] caused by the sign," *id.* § 9-26-070(g).

¶7     Lawrence and Sarah Jean Colosimo, A.C.'s parents and heirs, brought a wrongful death and survival action against Gateway for negligence. During discovery the Colosimos deposed Gateway's pastor and a journeyman mechanic who occasionally assisted Gateway with its routine inspections. The pastor testified about his involvement with Gateway and the inspections and maintenance of the building. The Colosimos also had their electrical engineer expert witness provide a declaration describing the problems with the sign, concluding it was not safely installed, and stating that its defects would have been "plainly visible" to a professional electrician. The Colosimos filed a motion to strike the pastor's declaration and the mechanic's testimony, and Gateway moved to strike the electrical engineer's declaration.

¶8     After discovery was completed, Gateway moved for summary judgment, which the district court granted, concluding Gateway owed no duty to A.C. because he was a trespasser. The district court also denied the Colosimos' and Gateway's motions to strike, "as being immaterial to the Court's ruling with one exception[:] [t]he portions of the [Colosimos' expert witness's] Declaration concluding [Gateway] was 'on notice' of the condition" was stricken as "an inappropriate legal conclusion." The Colosimos timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶9     The Colosimos challenge the district court's ruling and order granting Gateway's motion for summary judgment on two grounds. They "contend that Gateway owed a duty to [A.C.] prescribed by the [Sign Ordinances] and, alternatively a duty under common law as set forth in Restatement (Second) of Torts [s]ections 333–339 (1965)." "Summary judgment is appropriate

where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312 (omission in original) (quoting an earlier version of rule 56 of the Utah Rules of Civil Procedure). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).[3]

¶10    The Colosimos also argue the district court erred in refusing to strike the pastor's declaration and the mechanic's testimony and in granting Gateway's motion to strike a portion of their expert witness's declaration. "We review the district court's evidentiary rulings under an abuse of discretion standard," *Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 17, 351 P.3d 832 (citation and internal quotation marks omitted), and "deference . . . is the hallmark of abuse-of-discretion review," *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997).

ANALYSIS

I. Duty

¶11    To "prevail on a negligence claim, a plaintiff must establish . . . that the defendant owed the plaintiff a duty . . .

---

3. The parties also dispute their relative burdens under *Orvis v. Johnson*, 2008 UT 2, 177 P.3d 600, to demonstrate there is no genuine issue of material fact in order for summary judgment to be appropriate. But because it is undisputed that A.C. was trespassing at the time of the accident and this fact is dispositive, we do not address this issue further.

[and] that the defendant breached that duty." *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). The district court granted summary judgment because it determined Gateway did not owe a duty to A.C. under either the Sign Ordinances or common law. We first address the Colosimos' common law arguments and then consider whether Gateway owed a duty under the Sign Ordinances.

## A.      Gateway Did Not Owe A.C. a Duty Under Common Law

¶12      The Colosimos argue Gateway owed A.C. a duty under common law. We note that "because negligence cases often require the drawing of inferences from the facts, which is properly done by juries rather than judges, summary judgment is appropriate in negligence cases only in the clearest instances." *Castellanos v. Tommy John, LLC*, 2014 UT App 48, ¶ 7, 321 P.3d 218 (citation and internal quotation marks omitted). But, "without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate." *Tallman v. City of Hurricane*, 1999 UT 55, ¶ 5, 985 P.2d 892 (citation and internal quotation marks omitted).

¶13      As a general rule, "'a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care.'" *Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996) (quoting Restatement (Second) of Torts § 333 (Am. Law Inst. 1965)). "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (Am. Law Inst. 1965). A.C. was on the roof without permission, and therefore he was trespassing when he was electrocuted.

¶14      Even so, the Restatement (Second) of Torts recognizes some exceptions to the general rule, and the Colosimos argue that these apply. Specifically, sections 334, 335, and 339 impose liability when "a possessor of land" "knows, or from facts within

his knowledge should know," that "trespassers constantly intrude" or "children are likely to trespass," and the possessor "fails to exercise reasonable care" in carrying on an activity or maintaining "an artificial condition" involving a "risk of . . . serious bodily harm." *See* Restatement (Second) of Torts §§ 334, 335, 339.[4]

¶15 The Colosimos contend "the court erred when it found as a matter of law that Gateway's actual knowledge of two instances of trespass over a decade was insufficient to put Gateway on notice of habitual trespassers." (Emphasis omitted.) They rely on our supreme court's decision in *Lopez v. Union Pacific Railroad Co.*, 932 P.2d 601 (Utah 1997), to support their argument that two instances are sufficient to establish habitual trespassing.

¶16 In *Lopez*, the plaintiff worked in an "industrial area serviced by several sets of railroad spur tracks belonging to the occupants of the adjacent businesses." *Id.* at 602. He was injured one night as he crossed the railroad tracks to reach a parking lot. *Id.* at 602–03. The Colosimos point to the fact that the railroad company "on two separate occasions . . . noted that employees [of neighboring businesses] were crossing between the rail cars

---

4. "The exceptions stated in sections 334 to 339 deal generally with activities and artificial conditions highly dangerous to constant trespassers on a limited area or to known trespassers, controllable forces dangerous to known trespassers, and artificial conditions highly dangerous to trespassing children." *Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996). The Colosimos do not address the exceptions separately and because all of the sections upon which they rely have the common requirement that the possessor of land know or should know that trespassers are likely to intrude, we likewise do not analyze the exceptions separately.

while cars were being switched and indicated that [this] practice must be stopped." *Id.* at 605. But *Lopez* involved more than two instances of trespassing. Rather, the "[p]laintiff produced evidence that workers *habitually* crossed over the cuts of rail cars to reach parking lots," and management was aware of the practice. *Id.* at 602, 605 (emphasis added). And although the company made note of the trespassing "on two separate occasions," that does not mean the trespassing occurred only twice: it was a "practice" and not an isolated couple of instances. *Id.* at 605. Thus, we agree with the district court that "[t]hose facts are different from [the facts of this case] under which there were two isolated incidents of people accessing the roof over a 14-year period." Two incidents of trespassing over so many years do not rise to the level of constant intruding and are not enough to put Gateway on notice that "children are likely to trespass" as expressed in the exceptions outlined in the Restatement. *See* Restatement (Second) of Torts §§ 334, 335, 339.

¶17   Because A.C. was a trespasser and we conclude no exceptions apply to the general rule that "a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care," *Whipple*, 910 P.2d at 1220 (citation and internal quotation marks omitted), "there can be no negligence as a matter of law, and summary judgment is appropriate" on this issue, *see Tallman v. City of Hurricane*, 1999 UT 55, ¶ 5, 985 P.2d 892 (citation and internal quotation marks omitted). We therefore affirm the district court's determination that Gateway did not owe A.C. a duty under common law.

B.    Gateway Did Not Owe A.C. a Duty Under the Sign Ordinances.

¶18   The Colosimos also contend Gateway "owed a duty to [A.C.] prescribed by the . . . Sign Ordinance[s]," and the "court erroneously determined that a necessary predicate for a duty under an ordinance toward a trespasser is a showing of a duty under common law." (Emphasis omitted.)

¶19   "When the State has granted general welfare power to local governments, those governments have independent authority . . . to pass ordinances which are reasonably and appropriately related to the objectives of that power, i.e., providing for the public safety, health, morals, and welfare." *State v. Hutchinson*, 624 P.2d 1116, 1126 (Utah 1980). Further, "courts will not interfere with the legislative choice . . . unless it is arbitrary, or is directly prohibited by, or is inconsistent with the policy of, the state or federal laws . . . ." *Id.*; *see also Walker v. Union Pacific R.R.*, 844 P.2d 335, 339 (Utah Ct. App. 1992) ("Utah permits local governments to legislate by ordinance those subjects already covered by state legislation, provided . . . the ordinance in no way conflicts with existing state law." (citation and internal quotation marks omitted)).

¶20   "As a general rule, violation of a standard of safety set by a statute or ordinance is prima facie evidence of negligence." *Hall v. Warren*, 632 P.2d 848, 850 (Utah 1981). In this case, the Colosimos assert a duty under the Sign Ordinances that would skirt the common law defense that a possessor of land does not owe a duty to a trespasser. In general, "[s]tatutes which impose duties or burdens or establish rights or provide benefits not recognized by the common law have frequently been held subject to strict, or restrictive, interpretation." 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 61:1 (7th ed. 2007). "[W]here a statute creates a new and onerous obligation not recognized at common law, it must be shown that such meaning is very plain in order to have the rule apply." *Id.* And "legislation creating liability where no liability existed at common law should be construed most favorably to the person or entity subjected to the liability, and against the claimant for damages." *Id.*

¶21   The Utah Legislature has stated that this rule of statutory construction "does not apply to the Utah Code." *See* Utah Code Ann. § 68-3-2(1) (LexisNexis 2014). But some Utah cases have

continued to adhere to the rule in interpreting ordinances. *See, e.g.*, *Brown v. Sandy City Board of Adjustment*, 957 P.2d 207, 210–11 (Utah Ct. App. 1998) (explaining that "because zoning ordinances are in derogation of a property owner's common-law right to unrestricted use of his or her property, provisions therein restricting property uses should be strictly construed" (citation and internal quotation marks omitted)); *Patterson v. Utah County Board of Adjustment*, 893 P.2d 602, 606 (Utah Ct. App. 1995) (same).

¶22    Although "violation of a standard of safety set by a statute or ordinance" may be evidence of negligence, *Hall*, 632 P.2d at 850, where "[t]he ordinance does not purport to extend or modify the common-law rule of the nonliability of landowner to trespassers . . . the duty . . . should be determined in accordance with the common law governing the relationship of [plaintiff] and defendant." *Wells v. Henry W. Kuhs Realty Co.*, 269 S.W.2d 761, 767 (Mo. 1954). Thus, "defendant's conduct (even though made negligent by ordinance) [is] actionable negligence as to those persons who were rightfully on defendant's premises (or as to those who came within an exception to the general rule of nonliability of landowners to trespassers . . . )." *Id.* (emphasis omitted).

¶23    An ordinance "dealing not at all with defenses, would presumably be interpreted as intended to be fitted into the common law background, imposing merely a prima facie liability, but leaving the courts free to apply familiar common law rules . . . ." *Apanovich v. Wright*, 226 F.2d 656, 659 (1st Cir. 1955). Case law has followed this general framework and violations of city ordinances have been held to be subject to common law defenses.

¶24    Indeed, the case the Colosimos rely on to assert a duty under the Sign Ordinances itself recognizes common law defenses as "justification or excuse" for the defendant's conduct. *See Hall*, 632 P.2d at 850–51 (citing the defenses in Restatement

(Second) of Torts 2a, section 288A). And in a case factually similar to the circumstances here, *Burnett v. Fort Worth Light & Power Co.*, 112 S.W. 1040 (Tex. 1908), a twelve-year-old boy went to the roof of a building "through a trap-door, and was there instantly killed by coming in contact with a live guy wire, which had become charged with electricity through the failure of the [company] to comply with one or more [of] the . . . ordinances of the city." *Id.* at 1040. The parents of the boy brought suit against the power company "to recover damages on account of [its] failure to observe [the] ordinances." *Id.* The Supreme Court of Texas held that the plaintiffs were not entitled to recover "since the deceased boy was clearly a trespasser upon the roof of the building where [the company's] wires were strung." *Id.* at 1042. The court explained that

> [t]he civil action is maintainable when, and only when, the person complaining is of a class entitled to take advantage of the law, is a sufferer from the disobedience, is not himself a partaker in the wrong of which he complains, or is not otherwise precluded by the principles of the common law from his proper standing in court.

*Id.* (citation and internal quotation marks omitted).

¶25 The Utah Supreme Court has similarly held that the estate of a deceased trespasser was not entitled to recover despite the defendant's violation of a city ordinance. *See Daley v. Salt Lake & U.R. Co.*, 247 P. 293 (Utah 1926). In *Daley*, the deceased was standing on the "private premises and right of way of [the] defendant" railroad company when he was "struck and killed by an electric car operated by" the company. *Id.* at 294. At the time of the accident, the train car was traveling at twenty-five or thirty-six miles per hour in violation of a city ordinance that restricted the speed of the cars to twelve miles per hour. *Id.* The supreme court determined that, despite the fact the railroad company was violating the city ordinance at the time of the

accident, the plaintiff was precluded "from recovering any judgment at all" because the "deceased was wrongfully on the private right of way of defendant at a place where he could not have reasonably been expected to be, and that he was therefore a trespasser." *Id.*

¶26 In this case, the ordinances at issue state that "[t]he provisions of [the] ordinance[s] shall not be construed to relieve or limit in any way, the responsibility or liability of any person, firm, or corporation which erects or owns any sign, for personal injury or property damage[] caused by the sign." Draper City, Utah, Ordinance 505, § 9-26-070(g) (2003), http://sirepub.draper.ut.us/sirepub/cache/25/gf3msmwz0eb4nzbnzbnma3if/323208262016094012556.PDF [https://perma.cc/D4T5-ZZMG]. Because the Colosimos would "impose duties or burdens or establish rights or provide benefits not recognized by the common law" under the Sign Ordinances, those ordinances should be strictly construed. *See* 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 61:1 (7th ed. 2007). The ordinances do not explicitly "extend or modify the common-law rule of the nonliability of landowner to trespassers," *Wells*, 269 S.W.2d at 767, nor do they address any defenses available to those who might violate the ordinance. *See Apanovich*, 226 F.2d at 659. Thus, the duty "should be determined in accordance with the common law governing the relationship of [plaintiff] and defendant," *Wells*, 269 S.W.2d at 767, and the court is "free to apply familiar common law rules," *Apanovich*, 226 F.2d at 659. Here, it is undisputed that A.C. was trespassing on Gateway's roof at the time of the accident. We therefore conclude that the district court did not err in determining that, although "Gateway was . . . negligent in maintaining its property, and that would potentially have legal consequences for Gateway had [A.C.] been an invitee or licensee," Gateway did not owe A.C. a duty under the Sign Ordinances because he was a trespasser.

## II. Motions to Strike

A.    The District Court Did Not Abuse its Discretion in Denying the Colosimos' Motion to Strike.

¶27   The Colosimos argue the district court abused its discretion by denying their motion to strike, thereby "accept[ing] certain evidence from witnesses lacking personal knowledge on the key issues related to the [s]ign installation and notice of electrical problems." Specifically, they object to portions of the pastor's declaration and the mechanic's testimony "[b]ecause neither . . . had any personal knowledge of the facts at issue" as required by Utah Rule of Evidence 602 and rule 56(e) of the Utah Rules of Civil Procedure.[5] "We review a district court's decision on a motion to strike . . . for an abuse of discretion." *Portfolio Recovery Assocs., LLC v. Migliore*, 2013 UT App 255, ¶ 4, 314 P.3d 1069. "To constitute an abuse of discretion, the ruling must have been harmful error." *State v. Dibello*, 780 P.2d 1221, 1228 (Utah 1989).

¶28   Rule 602 states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Utah R. Evid. 602. Rule 56(e) of the Utah Rules of Civil Procedure further specifies that affidavits supporting or opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

---

5. In their motion to strike the Colosimos address the testimonies of the pastor, the mechanic, and the Draper City police officer. In its order, the district court only mentions the pastor's declaration and indicates that the testimony to which the Colosimos object was immaterial to its decision. On appeal the Colosimos object to the pastor's declaration and the mechanic's testimony, but not the police officer's.

affirmatively that the affiant is competent to testify to the matters stated therein." Utah R. Civ. P. 56(e) (2014).[6]

¶29  The Colosimos argue that because the pastor joined Gateway in 2007 he did not have sufficient personal knowledge to testify about the purchase, manufacture, design, or installation of the sign or the electrical issues prior to that. The portions of the pastor's declaration to which the Colosimos object state: "To the best of my knowledge, in 2004, the Church arranged for the acrylic face of the above exterior sign to be replaced to reflect the words, 'Welcome to Gateway'"; "As far as I am aware, the Church did not purchase, manufacture, design, or install the oval exterior sign"; and, "To the best of my knowledge, the oval exterior sign was affixed to the property prior to the Church's purchase of the property." The Colosimos point to the pastor's deposition testimony as evidence that he did not have any personal knowledge of "facts relevant to the [s]ign before he joined Gateway in 2007." The Colosimos similarly argue that the mechanic's testimony is inadmissible for lack of personal knowledge because he did not join Gateway until 2008.[7]

¶30  But in its order granting summary judgment, the court denied the Colosimos' motion to strike as "immaterial" to its ruling. Because the testimony "played no role in the district court's decision on summary judgment, the [Colosimos] cannot show that they were prejudiced by the district court's denial of

---

6. The requirements of rule 56(e) have been moved to subsection 56(c)(4). Because the motions to strike and the briefs on appeal refer to 56(e), we cite to the Utah Rules of Civil Procedure as amended in 2014.

7. The Colosimos' brief states that the mechanic joined Gateway in 2009. His testimony, however, is that he joined Gateway in 2008 and became a member of its board in 2009.

their motion to strike [and] . . . we will not reverse the district court on this basis." *See Mitchell v. ReconTrust Co.*, 2016 UT App 88, ¶ 42, 373 P.3d 189, *petition for cert. filed*, July 29, 2016 (No. 20160635); *see also GNS P'ship v. Fullmer*, 873 P.2d 1157, 1165 (Utah Ct. App. 1994) (holding that plaintiff was not prejudiced by the trial court's admission of portions of an affidavit because it "had no bearing on the court's ultimate ruling"). We thus conclude the Colosimos have not shown harmful error in the district court's denial of their motion to strike.

B.      The District Court Did Not Abuse its Discretion in Granting Gateway's Motion to Strike Portions of the Colosimos' Expert Witness's Declaration.

¶31     The Colosimos also argue the court abused its discretion in striking a portion of their electrical engineer expert's declaration. Paragraphs nineteen and twenty of the expert's declaration state that "Gateway had notice of the hazardous electrical condition throughout its operation of the sign," and "Gateway Church also likely had . . . notice that there were electrical problems with electricity and the sign." The court struck these statements as "inappropriate legal conclusion[s]." The Colosimos assert that their expert's statements are admissible "factual inferences and opinions, not legal conclusions." (Emphasis omitted.)

¶32     The Colosimos rely on *Eskelson v. Davis Hospital & Medical Center*, 2010 UT 59, 242 P.3d 762, and rule 704 of the Utah Rules of Evidence. Our supreme court in *Eskelson* stated that "an expert can rely on his own interpretation of facts that have a foundation in the evidence, even if those facts are in dispute." *Id.* ¶ 16. Rule 704 of the Utah Rules of Evidence also states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Utah R. Evid. 704. "Nevertheless, opinions that . . . give legal conclusions continue to be impermissible under rule 704." *State v. Davis*, 2007 UT App 13, ¶ 15, 155 P.3d 909 (citation and internal quotation marks omitted).

¶33    There is no "bright line between [opinions] that embrace an ultimate issue and those that provide an impermissible legal conclusion." *State v. Tenney*, 913 P.2d 750, 756 (Utah Ct. App. 1996). But legal conclusions "tend to blur the separate and distinct responsibilities of the judge, jury, and witness." *Steffensen v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1347 (Utah 1993). Statements that "tell the jury what result to reach," *id.*, or "tie their opinions to the requirements of Utah law" are not permitted, *Tenney*, 913 P.2d at 756.

¶34    The Colosimos' expert's statements that Gateway had notice of the electrical problems and condition imply that Gateway knew or should have known of the hazard and thus impermissibly "tie" into the "requirements of Utah law." *See id.* at 756–57. Accordingly, we determine the court did not abuse its discretion in striking these portions of the expert's declaration. But the court struck only those paragraphs that conclude Gateway had notice. His statements "as to everything except his final conclusion" were allowed and would enable a fact-finder to "draw[] its own conclusions from the evidence presented." *Davidson v. Prince*, 813 P.2d 1225, 1231–32 (Utah Ct. App. 1991). We therefore conclude the district court did not abuse its discretion in granting in part Gateway's motion to strike.

CONCLUSION

¶35    In sum, we determine the district court did not err in concluding that Gateway owed no duty to A.C. under common law or under the Sign Ordinances. We also conclude the court did not abuse its discretion in striking portions of the Colosimos' expert's declaration as a legal conclusion. In addition, we conclude the Colosimos were not harmed by the district court's denial of their motion to strike. We therefore affirm.

———————