*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 26**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

LAWRENCE and SARAH JEAN COLOSIMO,
*Petitioners,*

*v.*

GATEWAY COMMUNITY CHURCH,
*Respondent.*

No. 20160838
Filed June 26, 2018

On Certiorari to the Utah Court of Appeals

Third District, West Jordan
The Honorable Barry G. Lawrence
No. 120414704

Attorneys:

Jefferson W. Gross, Aida Neimarlija, Salt Lake City, for petitioners

Mark Dalton Dunn, Trystan B. Smith, Troy L. Booher,
Beth E. Kennedy, Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUDGE JOHNSON joined.

Due to her retirement, JUSTICE DURHAM did not participate herein;
DISTRICT COURT JUDGE CHRISTINE S. JOHNSON sat.

JUSTICE PETERSEN became a member of the Court on
November 17, 2017, after oral argument in this matter and
accordingly did not participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1  A teenage boy died from injuries he sustained while
trespassing on the roof of a one-story building owned by a local
church. Due to faulty wiring of a sign, he was electrocuted while

attempting to climb down. The boy's parents brought a wrongful death suit against the church, claiming that the church breached its duty to their son under the common law and under a city sign ordinance. On summary judgment, the district court held that because the boy was a trespasser the church owed him no duty. The court of appeals affirmed the district court on both grounds and we granted certiorari. We now must decide whether the court of appeals erred in affirming the district court's grant of summary judgment. Because the boy's parents failed to show a duty existed under either the common law or the sign ordinance, we affirm the court of appeals' decision.

### Background

¶2   In 2012, sixteen-year-old A.C. and his two cousins decided to go "roofing," i.e., climbing on roofs after dark. They climbed up a permanently-fixed ladder onto the roof of a one-story building owned by Gateway Community Church (Gateway), located in Draper, Utah. It is undisputed that the boys climbed onto the roof without permission. Unbeknownst to A.C. and his cousins, the building contained an oval sign that was improperly wired. Due to the faulty wiring, the metal flashing[1] on the roof had become electrified. While scaling the ladder, both A.C. and one of his cousins felt a shock when they inadvertently touched the flashing.

¶3   After ten minutes or so on the roof, and after discussing the possible reasons for the electrified flashing, the boys decided to cautiously vacate the roof. The two cousins made it down safely, but on A.C.'s way down, his foot got caught between the ladder and the metal flashing, and he was electrocuted for ten to fifteen seconds. He lost consciousness and was taken to the emergency room. A.C. passed away ten days later due to complications from the electrocution.

¶4   After the accident, a Draper City building inspector — with the assistance of a Draper police officer and Gateway's pastor — inspected the roof but found no problem. He concluded that "everything was up to code." The following day, a fire marshal, along with a Gateway board member, inspected the roof for over an

---

[1] A flashing is generally defined as a piece of "[s]heet metal used to reinforce and weatherproof the joints and angles of a roof." *Flashing*, THE FREE DICTIONARY (last visited June 13, 2018) https://www.thefreedictionary.com/flashing.

hour without being able to pinpoint the source of the electricity in the flashing. Finally, through a process of elimination, the fire marshal was able to determine that an oval "Welcome to Gateway" sign was electrifying the roof's flashing. Further investigation revealed that the sign had been improperly installed. Lawrence and Sarah Jean Colosimo, A.C.'s parents and heirs, then had the sign inspected by an electrical engineer, who also identified the sign as the source of the problem.

¶5   Beginning as early as 1996, Draper City adopted several ordinances (collectively the "Ordinance")[2] regulating the "installation, maintenance or dilapidation" of signs within the city.[3] One of the express purposes of the Ordinance "is to protect and promote the health, safety and welfare of City residents."[4] In order to "protect the safety and welfare of the people of the City," the Ordinance prohibits any sign that "constitutes a hazard to safety or health by reason of inadequate installation, maintenance or dilapidation."[5] The Ordinance requires all signs to be "maintained in good and safe structural condition, [and] in compliance with all building and electrical codes."[6] Any person who violates this Ordinance is "guilty of a Class B misdemeanor."[7] The Ordinance also contains a provision entitled "Liability for Damages," which provides that "[t]he provisions of this ordinance shall not be construed to relieve or to limit in any way, the responsibility or liability of any person, firm, or corporation which erects or owns any sign, for personal injury or property damaged caused by the sign."[8]

---

[2] The ordinances listed in the Colosimos' brief and analyzed by the court of appeals and district court below are a collection of sign ordinances from the years 1996, 2003, and 2011. Neither party argued before the court of appeals that a certain version of the Ordinance did not apply. Nor did they do so on certiorari. Accordingly, like the court of appeals, we treat these provisions as one consistent version of the Draper sign ordinance.

[3] DRAPER, UTAH, ORDINANCE § 9-14-090(a)(9)(i) (1996).

[4] Id. § 9-26-010 (2011).

[5] Id. § 9-14-090(a) (1996).

[6] Id. § 9-14-070(c)(1)(iii) (1996).

[7] Id. § 9-26-070(d) (2003).

[8] Id. § 9-26-070(g) (2003); see also id. § 9-26-050(H)(6) (2011).

¶6 The installation date of the oval sign is unknown. Gateway leased a suite within the building starting in 1999 and eventually purchased the entire building in 2003. Sometime in 2003 or 2004, Gateway had a new acrylic faceplate installed in the existing sign cabinet that was attached to the building. The Colosimos' electrical expert posited that the sign was not installed during the original construction of the building in 1999. The pastor testified that, "[a]s far as [he was] aware, the Church did not purchase, manufacture, design, or install the oval exterior sign," and that, "[t]o the best of [his] knowledge, the oval exterior sign was affixed to the property prior to the Church's purchase of the property."

¶7 The Colosimos brought a wrongful death and survival suit against Gateway for negligence. Gateway moved for summary judgment, arguing that it owed A.C. no duty because he was a trespasser. In opposing summary judgment, the Colosimos argued that, despite A.C. being a trespasser, Gateway owed him a duty under the common law and under the Ordinance. Specifically, they argued that Gateway was aware of constant trespassing on the roof and so had a duty to trespassers under sections 334 and 335 of the Restatement (Second) of Torts. In support, the Colosimos pointed to the fact that Gateway had known of two instances, one in 2004 and the other in 2010, where people trespassed on its roof over the past twelve years. The Colosimos also provided the court with evidence of instances of loitering, littering, and break-ins on Gateway's property (but not on its roof), as well as evidence that "roofing" had occurred on other buildings in Draper.

¶8 Additionally, they argued that Gateway owed a duty under the attractive nuisance doctrine as set forth in section 339 of the Restatement. The Colosimos asserted that because of A.C.'s age, he failed to appreciate the danger of electrocution on the roof. They also claimed that Gateway owed A.C. a duty under the Ordinance.

¶9 The district court granted summary judgment in favor of Gateway, concluding that because A.C. was a trespasser Gateway owed him no duty. Specifically, the district court held that the Colosimos failed to produce sufficient evidence to create a genuine issue of fact as to whether Gateway knew or should have known that people were constantly trespassing under sections 334 and 335, and as to whether Gateway knew or had reason to know of the existence of a dangerous condition on its roof, an additional element required under section 339. The district court also held that the Ordinance did not create an independent duty under tort law.

¶10 The Colosimos timely appealed and the court of appeals affirmed the district court's holdings.[9] While the court of appeals did not address the parties' burden on summary judgment, it stated that the Colosimos failed to show that Gateway knew of constant trespassing, a requirement the court believed applied to all three Restatement sections.[10] The court also held that Gateway owed no duty under the Ordinance because ordinances should be strictly construed when they conflict with the common law.[11] The Colosimos thereafter filed a petition for writ of certiorari with our court, which we granted. We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## Standard of Review

¶11 We granted certiorari on two issues: first, whether the court of appeals erred in concluding Gateway could not be held liable for A.C.'s death under a common law theory of negligence, and second, whether the court of appeals erred in concluding Gateway could not be held liable for A.C.'s death under a municipal ordinance regulating signs. "On certiorari, we give the court of appeals' decision no deference and review its decision under a correctness standard."[12] Further, "'[t]he question of whether a duty exists is a question of law' and is reviewed for correctness."[13]

## Analysis

¶12 The Colosimos' claims for wrongful death and survival are based in negligence.[14] To prevail on a negligence claim, "the plaintiff must [first] establish . . . that the defendant owed the plaintiff a duty" and "that the defendant breached that duty."[15] "Absent a

---

[9] *Colosimo v. Gateway Cmty. Church*, 2016 UT App 195, ¶ 35, 382 P.3d 667.

[10] *Id.* ¶ 14 & n.4.

[11] *Id.* ¶¶ 21–22, 26.

[12] *Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 13, 374 P.3d 3.

[13] *Slisze v. Stanley-Bostitch*, 1999 UT 20, ¶ 9, 979 P.2d 317 (citation omitted).

[14] *See Whipple v. Am. Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996).

[15] *Torrie v. Weber Cty.*, 2013 UT 48, ¶ 9, 309 P.3d 216 (citation omitted); *see also MacGregor v. Walker*, 2014 UT 2, ¶ 11, 322 P.3d 706

(Continued)

showing that the defendant owed any duty, the plaintiff's claim has no merit, and he or she may not recover."[16]

¶13 The court of appeals affirmed the district court's holding that the Colosimos failed to show that Gateway owed a duty to A.C. under the common law or under the Ordinance. The court of appeals was correct on both counts. The Colosimos did not show that there was a genuine issue of fact on the question of whether Gateway knew that there was constant trespassing on the roof as required under sections 334 and 335 of the Restatement (Second) of Torts, or on the question of whether Gateway knew that the metal flashing on the roof was electrified, thereby creating a dangerous condition under section 339. The Colosimos also failed to show that the Ordinance created an independent duty in tort. The court of appeals did err, however, in failing to reach the question of what burden the parties bore on summary judgment and in conflating the knowledge requirement of section 339 of the Restatement (Second) of Torts with the knowledge requirement of sections 334 and 335. We correct those errors and ultimately affirm the court of appeals' decision.

## I. The Court of Appeals Correctly Held that Gateway Owed No Duty Under the Common Law

¶14 The Colosimos first argue that the court of appeals erred when it affirmed the district court's holding that Gateway owed A.C. no duty under the common law. When deciding whether a possessor of land owes a duty to another person, we must first determine "whether that person is an invitee, a licensee, or a trespasser."[17] We have defined the term "trespasser" as a person who enters on a possessor's land "without a privilege to do so created by the possessor's consent or otherwise."[18] It is clear that A.C. climbed on Gateway's roof without Gateway's consent, and neither party disputes that A.C. was a trespasser in this case. So the Colosimos'

---

("An essential element of every negligence action is the existence of a duty of care owed by the defendant to the plaintiff.").

[16] *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 12, 52 P.3d 1230.

[17] *Whipple v. Am. Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996)

[18] *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 329 (AM. LAW INST. 1965)).

argument turns on what duty is owed to a trespasser under the common law.

¶15 In *Whipple v. American Fork Irrigation Co.*, we stated that, under our caselaw, it appears that "the only duty a possessor of land owes to a trespasser is to not willfully or wantonly injure him."[19] But we also held that this rule did not completely sum up the duty a landowner owes to a trespasser, and we expressly adopted section 333 of the Restatement (Second) of Torts as our standard, noting that it "more accurately states the duty owed."[20]

¶16 Under section 333, "a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care."[21] But section 333 also recognizes exceptions to this rule, which are set forth in sections 334 through 339 of the Restatement.[22] These exceptions "deal generally with activities and artificial conditions highly dangerous to constant trespassers on a limited area or to known trespassers, controllable forces dangerous to known trespassers, and artificial conditions highly dangerous to trespassing children."[23] Accordingly, because A.C. was a trespasser on Gateway's property, the Colosimos must find a duty under one of these exceptions in order to gain relief under the common law.

¶17 In its order below, the district court concluded that none of these exceptions applied. Before the court of appeals, the Colosimos challenged only the district court's holding on three of these exceptions—sections 334, 335, and 339—and the court of appeals limited its analysis to these three exceptions.[24] On certiorari, the Colosimos argue that the court of appeals erred in affirming the district court's decision on these three exceptions. We therefore also limit our analysis to these three exceptions, and hold that the court of appeals correctly affirmed the district court's holding on each of these exceptions.

---

[19] *Id.*

[20] *Id.*

[21] RESTATEMENT (SECOND) OF TORTS § 333.

[22] *Id.*

[23] *Whipple*, 910 P.2d at 1220.

[24] *Colosimo v. Gateway Cmty. Church*, 2016 UT App 195, ¶ 14, 382 P.3d 667.

*A. The Court of Appeals Correctly Held that Sections 334 and 335 of the Restatement (Second) of Torts Do Not Apply*

¶18 The court of appeals correctly held that sections 334 and 335 of the Restatement (Second) of Torts do not apply in this case because there was no genuine issue of material fact as to whether Gateway knew or should have known that trespassers "constantly intrude" upon its rooftop. Section 334, entitled "Activities Highly Dangerous to Constant Trespassers on Limited Area," provides:

> A possessor of land who knows, or from facts within his knowledge should know, that *trespassers constantly intrude* upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.[25]

Section 335, entitled "Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area," likewise provides:

> A possessor of land who knows, or from facts within his knowledge should know, that *trespassers constantly intrude* upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if
>     (a) the condition
>             (i) is one which the possessor has created or maintains and
>             (ii) is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and
>             (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
>     (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.[26]

¶19 Both of the above sections require the plaintiff to produce evidence that trespassers constantly intrude upon a specific portion of the landowner's property containing the dangerous activity or condition. In other words, "[i]n order that the possessor of land may

---

[25] RESTATEMENT (SECOND) OF TORTS § 334 (emphasis added).

[26] *Id.* § 335 (emphasis added).

be subject to liability under the rule in [sections 334 and 335], it is necessary that he know, or from facts within his knowledge should know, that persons constantly and persistently intrude upon some particular place within the land."[27]

¶20 The court of appeals held that sections 334 and 335 were inapplicable because the Colosimos failed to show that Gateway knew or, from the facts within its knowledge, should have known that trespassers "constantly intrude" on the roof.[28] The Colosimos had originally provided the district court with evidence of two instances where Gateway knew of trespassers on Gateway's roof; one in 2004 and another in 2010. The district court held that these two instances were insufficient to establish constant trespassing as required by the Restatement. On appeal, the court of appeals rejected the Colosimos' contention that "the [district] court erred when it found as a matter of law that Gateway's actual knowledge of two instances of trespass over a decade was insufficient to put Gateway on notice of habitual trespassers."[29] Relying on *Lopez v. Union Pacific Railroad Co.*,[30] the court of appeals pointed out that our court has found "habitual trespassing" when a "[p]laintiff produced evidence that [others] habitually [trespass]" and that the defendant was "aware of [such] practice," but not when there were merely "an

---

[27] *Id.* § 334 cmt. d.

[28] *See Colosimo*, 2016 UT App 195, ¶ 16. It is important to note, as the district court noted and Gateway argued in its briefing before us, that section 334 of the Restatement applies only to situations in which an owner carries on dangerous *activities* on the property at issue. *See* RESTATEMENT (SECOND) OF TORTS § 334. Here, no dangerous *activity* was being conducted on Gateway's property—Gateway used suites within the building to conduct non-dangerous, church-related activities, and none of these activities was ongoing at the time A.C. climbed the roof. While there was arguably a dangerous *condition*—i.e., the sign or the electrified metal flashing—present on the property at the time of the accident, section 335, not section 334, applies to dangerous *conditions*. Thus, the Colosimos cannot rely upon section 334 in this case, and the court of appeals correctly held that Gateway did not owe a duty to A.C. under that section.

[29] *Colosimo*, 2016 UT App 195, ¶¶ 15–17.

[30] 932 P.2d 601 (Utah 1997).

isolated couple of instances."[31] The court ultimately affirmed the district court, concluding that "[t]wo incidents of trespassing over so many years do not rise to the level of constant intruding and are not enough to put Gateway on notice."[32]

¶21 We agree with the court of appeals. Two incidents of known trespass on its roof over a decade do not create a genuine issue of fact as to whether Gateway knew or should have known that trespassers were "constantly intrud[ing]" on its roof. In defining the constant intrusion requirement of sections 334 and 335, courts have held that a plaintiff must show that trespassers "regularly"[33] and "persistently"[34] intruded upon the limited area, and that even a showing of "frequent" trespass will not suffice.[35] We have likewise described this requirement as "habitual" intrusion.[36] It can hardly be said that two instances of trespass over a period of more than ten years amounts to regular, persistent, or habitual intrusion. And it is even more farfetched to suggest that two instances of intrusion within ten years places a party on constructive notice of regular, persistent, or habitual trespass. So the Colosimos cannot establish that Gateway owed a duty under section 334 or 335.

---

[31] *Colosimo*, 2016 UT App 195, ¶¶ 15–16 (first alteration in original) (emphasis omitted).

[32] *Id.* ¶ 16.

[33] *See, e.g., Maffucci v. Royal Park Ltd. P'ship*, 707 A.2d 15, 23 (Conn. 1998).

[34] *See, e.g., Huffman v. Appalachian Power Co.*, 415 S.E.2d 145, 154 (W. Va. 1991) (holding that as a "predicate step for a trespasser to establish liability," a plaintiff must bring forth "sufficient evidence that . . . others constantly and persistently intruded on [the limited area] or that [defendant] was aware of such intrusions"). The comments to section 334 also describe the constant trespass requirement as knowledge "that persons constantly and persistently intrude upon some particular place within the land." RESTATEMENT (SECOND) OF TORTS § 334 cmt. d.

[35] *See Humphrey v. Glenn*, 167 S.W.3d 680, 688 (Mo. 2005) (en banc) (holding a new trial was needed because the jury instructions contained the word "frequently," instead of the proper term "constantly," when defining the frequency of the intrusion).

[36] *Lopez*, 932 P.2d at 604–05.

¶22 The Colosimos also argue, however, that the court of appeals erred by failing to consider other circumstantial evidence—beyond the two known prior instances of trespass on the roof—that they believe further show the presence of a genuine issue as to whether constant trespassing was occurring on Gateway's property. The Colosimos provided the district court with evidence of prior instances of loitering, graffiti, littering, and break-ins on Gateway's property, none of which took place on its roof. The Colosimos also offered testimony of witnesses who stated that children were known to climb on roofs in Draper City and that Gateway knew of the existence of a box near the caged ladder, which the Colosimos contend made access to the ladder easier for intruders. They also cite to evidence where a board member of Gateway allegedly admitted that Gateway's roof was a "public place" where children were likely to intrude.[37] Lastly, the Colosimos state that Gateway's concession that a genuine issue of material fact exists as to section 339(a)'s requirement—that the possessor of land know or have reason to know that "children are likely to trespass" on the property—further evidences that Gateway knew or should have known of constant trespassing on the property.[38] Neither the district court, nor the court of appeals, mentioned these facts in their determinations on sections 334 and 335.[39]

---

[37] Gateway contends that the board member, Mr. Bowling, only admitted to the statement that "kids are kids" and not that the Gateway's rooftop was a "public place." While the questioning of Mr. Bowling was not particularly clear at his deposition, it appears from the record that Mr. Bowling admitted to the rooftop being a "public place" and that kids will be kids and will climb up on roofs.

[38] See *infra* section I.B. for further discussion of this requirement.

[39] These courts may have omitted discussion of these facts because neither believed such evidence was relevant to the factual dispute as to whether *habitual trespassing* occurred on Gateway's *roof*. The additional evidence cited by the Colosimos more appropriately applies to section 339(a)'s requirement—that the possessor of land know or have reason to know that "children are likely to trespass" on the property—which Gateway conceded was a disputed issue on summary judgment, and which the district court never reached because it dismissed the Colosimos' section 339 claim under section 339(b). *See infra* section I.B.

¶23 The Colosimos argue that the court of appeals "disregarded all such evidence" and that with this additional evidence, along with the direct evidence of two known instances of rooftop trespass, "a reasonable jury could infer that Gateway had a reason to know that there likely were a lot more trespassing incidents on Gateway's roof than the two admitted instances." They argue that a court should not limit the evidence it considers only to direct evidence but should consider all relevant evidence on summary judgment. But Gateway argues that this additional evidence cannot give rise to an inference that constant trespassing occurred on Gateway's rooftop.[40] Gateway states that because the break-ins, graffiti, and littering did not occur on the roof, it is not relevant to the "limited area,"—i.e., the roof—required in sections 334 and 335. Gateway also contends that "the fact that other people in Draper knew that teenagers were climbing onto other roofs" does not show that "Gateway knew about trespassing on its roof." Gateway further states that its concession regarding section 339(a)'s requirement that it knew or had reason to know that its rooftop is a place where children are likely to trespass

---

[40] The Colosimos also argue that the court of appeals "invade[d] the province of the jury" because questions of knowledge should be decided by a jury. But Gateway correctly characterizes the dispute on summary judgment: "The question of knowledge concerning constant trespassing becomes relevant only when there is constant trespassing of which one could have knowledge." So while knowledge of constant trespassing may be the province of the jury, the Colosimos needed to first provide sufficient evidence of constant trespassing to survive summary judgment.

This was the case in *Lopez v. Union Pacific Railroad Co.*, a case on which the Colosimos rely. As the court of appeals correctly noted, *Lopez* "involved more than two instances of trespassing" in a limited area. *Colosimo*, 2016 UT App 195, ¶ 16. The *Lopez* court expressly stated that "[p]laintiff produced evidence that workers habitually crossed over the cuts of rail cars to reach parking lots." *Lopez*, 932 P.2d at 605. Indeed, on both occasions where the railroad company made note of the trespassing, they stated that employees "[were] crossing between rail cars while cars [were] being switched," and that employees had been seen "crawling and jumping through cuts of cars" and that this "practice must be stopped." *Id.* at 602, 605. The *Lopez* court therefore reversed summary judgment because there was sufficient evidence of constant trespass to allow the jury to determine liability. *Id.* at 605.

is not a concession that there is a genuine issue of material fact as to habitual trespassing under sections 334 and 335.

¶24   The Colosimos are correct that we have never limited a district court's review on summary judgment to direct evidence. Rather, we have expressly stated "the nonmoving party . . . 'is entitled to the benefit of having the court consider *all of the facts presented*, and every inference fairly arising therefrom"[41] and that "*all facts* and the reasonable inferences to be made therefrom should be construed in a light favorable to the non-moving party."[42] But even considering the additional evidence mentioned above, along with the reasonable inferences made therefrom, the evidence taken as a whole does not raise a genuine issue of material fact as to whether trespassers were constantly intruding on the "limited area" at issue, i.e., the roof, as required under sections 334 and 335. Much of the circumstantial evidence the Colosimos cite concerns instances of possible trespass on areas other than the roof—trespass that occurred away from the dangerous condition. As the comments to the Restatement sections provide, "[i]t is not enough that [the landowner] know or have reason to know that persons persistently roam at large over his land."[43] Rather, the land owner must know or should know "that persons constantly and persistently intrude upon *some particular place* within the land."[44] Thus, while evidence of loitering, graffiti, littering, and break-ins may support the notion that trespassing occurred on Gateway's property in addition to the two rooftop instances, this additional evidence does not necessarily provide Gateway with knowledge that "persons constantly and persistently intrude" upon the *rooftop*.[45]

¶25 Similarly, testimony about other citizens' knowledge of children climbing other roofs in Draper does not prove children

---

[41] *Uintah Basin Med. Ctr. v. Hardy*, 2008 UT 15, ¶ 19, 179 P.3d 786 (emphasis added) (citation omitted).

[42] *USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 33, 235 P.3d 749 (emphasis added).

[43] RESTATEMENT (SECOND) OF TORTS § 334 cmt. d.

[44] *Id.* (emphasis added).

[45] *See Maffucci*, 707 A.2d at 22 (holding that "[k]nowledge of trespassers to other areas cannot . . . be the basis for imposing liability" under section 335).

constantly climbed Gateway's roof. Rather, this testimony supports section 339(a)'s requirement that the possessor know or have reason to know that "children *are likely to* trespass" on the limited area.[46] The only evidence relevant to the question of whether habitual trespassing actually occurred therefore was the two instances of known trespassing on Gateway's roof. Accordingly, the court of appeals correctly held that two instances of trespassing over more than a ten-year period did not create a genuine issue of material fact as to whether constant trespassing occurred or whether Gateway had notice of such constant trespassing.

*B. The Court of Appeals Correctly Concluded that Section 339 of the Restatement (Second) of Torts Does Not Apply*

¶26 The court of appeals also correctly held that Gateway did not owe A.C. a duty under section 339 of the Restatement. The court concluded that because the Colosimos failed to establish section 339(a)'s requirement—that children were likely to trespass on the roof—they could not sustain a claim under section 339. The court's reliance on section 339(a) as grounds for dismissal was error, however, because it incorrectly inferred that section 339(a)'s knowledge requirement is identical to those in sections 334 and 335, and Gateway had already conceded that section 339(a) was a disputed issue of fact. But this error does not undermine the court's ultimate determination on section 339 because the Colosimos failed to satisfy an additional requirement, which is set forth in section

---

[46] RESTATEMENT (SECOND) OF TORTS § 339(a) (emphasis added). In their efforts to use Gateway's concession as to section 339(a) as support of their claims under sections 334 and 335, the Colosimos seem to interpret section 339(a)'s requirement to read "the place where the condition exists is one upon which the possessor knows or has reason to know that children *are* trespassing," as opposed to its plain language, which reads "the place where the condition exists is one upon which the possessor knows or has reason to know that children *are likely to* trespass." By using the phrase "are likely to" instead of "are," the authors of the Restatement appear to suggest, however, that the actual or constructive knowledge the possessor must have under section 339(a) is knowledge that the place where the condition occurs is one that child trespassers may, more likely than not, trespass at *some time*—and not necessarily knowledge that children are *currently trespassing*. Thus, the knowledge requirement under section 339(a) is a lower threshold.

339(b). We outline the Colosimos' failure below and affirm the court of appeals' decision on alternative grounds.

¶27 On certiorari, the Colosimos maintain that Gateway also owed A.C. a duty under section 339 of the Restatement. We have expressly adopted section 339 as the "complete statement of the attractive nuisance doctrine" in our jurisprudence.[47] It provides that:

> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.[48]

In order for a plaintiff trespasser to prevail on an attractive nuisance claim, he or she must prove the existence of all five elements listed above.[49]

---

[47] *Kessler v. Mortenson*, 2000 UT 95, ¶ 14, 16 P.3d 1225.

[48] RESTATEMENT (SECOND) OF TORTS § 339.

[49] *Kessler*, 2000 UT 95, ¶ 15 ("Recovery [under the attractive nuisance doctrine] can only be had when the conditions of the rule are met. Indeed, the elements set forth in section 339 of the Second Restatement of Torts must be satisfied in order for the rule to be applicable."(citation omitted)).

¶28 The district court originally held on summary judgment that Gateway could not be liable under section 339 because the Colosimos did not provide sufficient evidence to create a genuine dispute as to section 339(b)'s requirement—that the possessor of land know or have reason to know of the existence of a particularly dangerous condition on the property. Specifically, the district court stated that "Gateway had no knowledge of, or reason to have known of [the defectively wired sign or electrified metal flashing] and could not have realized that there was a potentially lethal condition on its property." The court of appeals did not, however, affirm the district court's conclusion on the same grounds. Instead, the court appears to have concluded that section 339 did not apply in this case because the Colosimos could not prove section 339(a)'s requirement—that Gateway's rooftop was a place where children were likely to trespass. The court specifically stated that "[t]wo incidents of trespassing over so many years do not rise to the level of constant intruding and are not enough to put Gateway on notice that 'children are likely to trespass' as expressed in the exceptions outlined in the Restatement."[50] The court's reliance on section 339(a) was misplaced for two reasons.

¶29 First, it appears the court incorrectly applied the same knowledge requirement found in sections 334 and 335—that the possessor know or should know that trespassing occurs on the property—to section 339. The court expressly stated that it chose not to address the Restatement sections separately "because all of the sections upon which [the Colosimos] rely have the common requirement that the possessor of land know or should know that trespassers are likely to intrude."[51] The court then went on to state that the Colosimos failed to show constant trespassing.[52] As noted above, sections 334 and 335 require knowledge of actual and constant trespassing on the owner's property—not that trespassers *are likely to* intrude. But by stating that the sections shared the same knowledge requirement, it appears the court operated under the assumption that knowledge that "children are likely to trespass" is analogous to knowledge of actual trespassing. This interpretation misreads what is required under section 339(a). Section 339(a) requires the plaintiff to show that "the possessor [of land] knows or

---

[50] *Colosimo*, 2016 UT App 195, ¶ 16 (citation omitted).

[51] *Id.* ¶ 14 n.4.

[52] *Id.* ¶ 16.

has reason to know that children are likely to trespass."[53] Knowledge that children are likely to trespass is not, as the court of appeals suggested, the same as knowledge of actual trespassing. Rather, knowledge that children are likely to trespass means that the possessor knows that it is probable that children will trespass on his or her property in the foreseeable future.[54] Thus, while two instances of actual trespassers on the roof, and the circumstantial evidence noted above, may not be sufficient to show constant trespassing on Gateway's roof, it may be sufficient to show that Gateway knew or had reason to know that children are likely to trespass on its roof. Accordingly, the court of appeals erred in rejecting the Colosimos' section 339 claim on this ground.

¶30 The court also improperly relied on section 339(a) in its dismissal of the Colosimos' attractive nuisance claim because Gateway admitted that a dispute existed regarding section 339(a) in its memorandum in support of summary judgment below. Gateway argued before the district court that summary judgment was proper because the Colosimos failed to provide evidence of sections 339(b) and (c) and conceded that there may be disputes concerning sections 339(a), (d) and (e). The district court granted Gateway's motion for summary judgment on the Colosimos' section 339 claim under section 339(b) alone. The court of appeals, however, affirmed the district court's decision on the grounds that there was no disputed issue of fact on section 339(a)—the very element that Gateway conceded was disputed. Accordingly, the court of appeals erred in dismissing the Colosimos' section 339 claim on this ground.

¶31 The court's error here does not, however, change the end result in this case. The court's decision to dismiss the Colosimos' section 339 claim was correct on alternative grounds—the Colosimos failed to produce evidence, as required by section 339(b), that Gateway knew or had reason to know about the defective wiring or the electrified metal flashing and that these conditions created an unreasonable risk of death or serious bodily harm to children.[55] The

---

[53] RESTATEMENT (SECOND) OF TORTS § 339(a).

[54] *See supra* note 46.

[55] *See* RESTATEMENT (SECOND) OF TORTS § 339(b) (stating that a landowner is subject to liability for harm to children trespassers if "the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an

(Continued)

record shows that the Colosimos were unable to provide sufficient evidence that Gateway had actual knowledge that the sign was improperly wired or that it had observed any problem indicating that such was the case. While Gateway knew the sign had stopped working approximately one month before the accident, that does not support the inference that Gateway knew or had reason to know that the metal flashing had become electrified or that such condition would "cause an unreasonable risk of death or serious bodily harm" to a child.[56] The court of appeals therefore correctly affirmed the district court's dismissal of the Colosimos' section 339 claim.

¶32 Accordingly, although the court of appeals erred in its review of section 339(a), this error does not affect the ultimate outcome of the case because, as the district court correctly concluded, no genuine issue existed as to whether Gateway knew or had reason to know of the sign's defective wiring or the electrified metal flashing. Nor did Gateway realize, or should have realized, that such condition would cause death or serious bodily injury to children. The court of appeals therefore correctly affirmed the district court's holding.

¶33 Because the Colosimos failed to raise a genuine issue of fact regarding Gateway's knowledge of constant trespassing and its knowledge of a dangerous condition on the property, the Colosimos failed to satisfy an exception to our general bar on trespasser liability. So we affirm the court of appeals' determination that Gateway owed no duty to A.C. under the common law.

*C. Summary Judgment Standard*

¶34 The Colosimos next argue that the court of appeals erred in affirming the district court's decision to grant Gateway's motion for summary judgment because the district court incorrectly shifted the summary judgment burden to the Colosimos—the nonmoving party. Although the Colosimos argued this below, the court of appeals chose not to address this issue on appeal because it was undisputed that A.C. was a trespasser—a fact the court believed was dispositive.[57] The Colosimos argue this decision was incorrect. We agree with the Colosimos, but conclude that this error was harmless

---

unreasonable risk of death or serious bodily harm to such children").

[56] *See id.*

[57] *Colosimo*, 2016 UT App 195, ¶ 9 n.3.

because the district court correctly applied the summary judgment burden standard in this case.

¶35 The Colosimos first argue that the court of appeals erred in failing to address their argument that the district court incorrectly placed the summary judgment burden on them below. On appeal, the court of appeals noted that "[t]he parties also dispute their relative burdens under *Orvis v. Johnson* . . . for summary judgment," but chose not to address the argument "because it is undisputed that [A.C.] was trespassing at the time of the accident," a fact the court believed was "dispositive."[58] This was wrong; the fact that A.C. was a trespasser is not dispositive in this case and the court should have addressed the burden argument. As noted above, the Colosimos had asserted claims under sections 334, 335, and 339 of the Restatement (Second) of Torts—sections that apply only when the plaintiff seeking relief is a trespasser. So determining which party bore the burden on summary judgment to show, for example, that there was a genuine issue of material fact as to whether trespassers constantly intrude upon a limited area, is a decision that is unaffected by a plaintiff's trespasser status in this case. So the court of appeals erred when it chose not to address this argument. But this error did not affect the ultimate outcome of the case because, as the district court correctly concluded, the Colosimos carried the summary judgment burden on their claims.

¶36 The Colosimos take issue with this conclusion. They argue that Gateway failed to meet its burden on summary judgment because Gateway, as the moving party, cannot simply point to a lack of evidence to overcome its burden but instead must affirmatively "present admissible evidence in its moving papers demonstrating that a fact is not disputed." For support, the Colosimos rely on certain language in *Orvis v. Johnson*.[59] But, as we recently noted in *Salo v. Tyler*,[60] *Orvis* does not stand for the summary judgment standard the Colosimos advance on appeal.

¶37 In *Salo*, we considered an identical argument to the one the Colosimos make today—"that the moving party always bears the burden of coming forward with evidence establishing a basis for

---

[58] *Id.*

[59] 2008 UT 2, 177 P.3d 600.

[60] 2018 UT 7, --- P.3d ---.

judgment as a matter of law."[61] We acknowledged that this argument "has an apparent foothold in dicta in *Orvis*," where "we admittedly stated that 'Utah law does not allow a summary judgment movant to merely point out a lack of evidence in the nonmoving party's case, but instead requires a movant to affirmatively provide factual evidence establishing that there is no genuine issue of material fact.'"[62] We noted, however, that a mere two paragraphs later in *Orvis* we set forth a standard that mirrored the federal *Celotex*[63] standard, which allows the moving party that does not bear the burden of persuasion at trial to meet its initial burden without providing its own affirmative evidence:

> A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing, by reference to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is no genuine issue of material fact. UTAH R. CIV. P. 56(c). Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (e).[64]

Recognizing the apparent conflict between these two statements in *Orvis*, we acknowledged that *Orvis* may not be "entirely consistent on the question of the moving party's burden."[65]

¶38 Finally, in order to dispel any confusion over the summary judgment standard, in *Salo* we repudiated any notion that our standard departed from the federal *Celotex* standard.[66] And we reiterated our summary judgment standard:

---

[61] *Id.* ¶ 22.

[62] *Id.* ¶ 23 (quoting *Orvis*, 2008 UT 2, ¶ 16).

[63] *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

[64] *Salo*, 2018 UT 7, ¶ 25 (quoting *Orvis*, 2008 UT 2, ¶ 18).

[65] *Id.*

[66] *Id.* ¶ 28. It is also important to note that the Colosimos had sufficient notice of this standard well before *Salo*. In *Jones & Trevor*

(Continued)

the extent of the moving party's burden varies depending on who bears the burden of persuasion at trial. A movant who seeks summary judgment on a claim on which it will bear the burden of persuasion at trial cannot seek summary judgment without producing affirmative evidence in support of the essential elements of its claim. *But a movant who seeks summary judgment on a claim on which the nonmoving party bears the burden of persuasion may show that there is no genuine issue of material fact without producing its own evidence.*[67]

This means that "[i]f a defendant can show that the plaintiff has no legally sufficient evidentiary basis for its claims at trial, the defendant may establish the lack of a genuine issue of material fact

---

*Marketing, Inc. v. Lowry*, 2012 UT 39, 284 P.3d 630, which came four years after *Orvis*, we articulated the same standard we set forth in *Salo*. There, we stated that "[t]he determination of which party must come forward with evidence proving that there is a genuine material dispute of fact depends on which party bears the burden of proof on the underlying legal theory or claim that is the subject of the summary judgment motion." *Id.* ¶ 30. We also stated that "[w]here . . . the nonmoving party will bear the burden of proving the underlying legal theory at trial, the moving party may satisfy its initial burden on summary judgment by showing that 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any [show] that there is no genuine issue of material fact' and that '[u]pon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party.'" *Id.* (second alteration in original) (citations omitted). And, as we stated in *Salo*, we even noted in *Jones & Trevor Marketing* that "'our summary judgment jurisprudence regarding burden shifting' is 'entirely consistent with *Celotex.*'" *Salo*, 2018 UT 7, ¶ 27 (quoting *Jones & Trevor Mktg.*, 2012 UT 39, ¶ 30 n.9). So the Colosimos had notice of the correct summary judgment standard long before the district court's decision. They simply chose to ignore our holding in *Jones & Trevor Marketing*.

[67] *Salo*, 2018 UT 7, ¶ 26 (emphasis added).

and an entitlement to judgment as a matter of law . . . without adducing any affirmative evidence of its own."[68]

¶39 Based on the standard we articulated in *Orvis*, *Lowry*, and recently in *Salo*, we reject the Colosimos' summary judgment argument on appeal. We conclude that while the court of appeals should have addressed the issue of the parties' burdens on summary judgment, this error did not affect the outcome of the case because the district court did not err in its application of the standard below. The Colosimos are the plaintiffs in this case and therefore bear the burden of establishing the elements of their claims. As the moving party, however, Gateway bore the initial burden of demonstrating their entitlement to judgment as a matter of law, which it was entitled to do "without adducing any affirmative evidence of its own."[69] Gateway moved for summary judgment after discovery on the basis that the Colosimos failed to produce sufficient evidence to create a genuine issue of material fact as to whether Gateway owed a duty to A.C.—an element of the Colosimos' negligence claim. Gateway therefore met its initial burden. The burden then shifted to the Colosimos, the party with the burden of persuasion at trial, to produce affirmative evidence showing the existence of a genuine issue of fact as to whether a duty existed under the exceptions listed in the Restatement (Second) of Torts. The district court therefore correctly held that the burden of providing affirmative evidence fell on the Colosimos, which they failed to meet. Thus, although the court of appeals should have considered the summary judgment argument on appeal, this error did not change the outcome of the case.

¶40 Accordingly, we affirm the court of appeals' holding that no duty existed under the common law.

## II. The Court of Appeals Correctly Held that Gateway Owed No Duty Under the Draper City Sign Ordinance

¶41 We next consider whether the court of appeals erred in holding that Gateway did not owe A.C. a duty under the Ordinance. The Colosimos argue that the court of appeals erred because the Ordinance's language illustrates the Draper City Council's intention to protect trespassers from electrical shock resulting from improperly installed signs. They also argue that the court of appeals

---

[68] *Id.* ¶ 31.

[69] *Id.*

erred in strictly construing the language of the Ordinance. But nothing in the Ordinance illustrates the council's intention to protect trespassers. So even when read under *standard* rules of construction, the plain language of the Ordinance does not suggest it was enacted to protect A.C. from the injuries he suffered. We therefore affirm the court of appeals' holding that the Ordinance did not create a separate duty in tort to trespassers.

¶42 It is well established that state and local governments generally have power to create tort duties. The state legislature has broad police powers,[70] which include the power to form new tort duties through the enactment of statutes.[71] And, because local governments also are generally granted authority to protect the general welfare within their jurisdictions, they likewise have power to create duties through the enactment of ordinances to further that purpose.[72] So it is clear that the Draper City Council could have *explicitly* imposed a tort duty through the enactment of the Ordinance.

¶43 But the Draper City Council did not do so here. The Ordinance contains no explicit statement of an intention to create a tort duty owed to others, much less to trespassers. It does expressly

---

[70] *Dean v. Rampton*, 556 P.2d 205, 206 (Utah 1976) ("[T]he legislature, representing the people, . . . has all of the fundamental power of the sovereign to make whatever laws it deems proper for the general welfare.").

[71] *See, e.g., Torrie v. Weber Cty.*, 2013 UT 48, ¶¶ 8–13, 309 P.3d 216; *Day v. State ex rel Utah Dep't of Pub. Safety*, 1999 UT 46, ¶ 14, 980 P.2d 1171.

[72] *See Price Dev. Co., L.P. v. Orem City*, 2000 UT 26, ¶ 10, 995 P.2d 1237 ("When reviewing a local government action, we give local government great latitude in creating solutions to the many challenges it faces, unless the action 'is arbitrary, or is directly prohibited by, or is inconsistent with the policy of, the state or federal laws or the constitution of [Utah] or of the United States.'"(alteration in original) (citation omitted)); *State v. Hutchinson*, 624 P.2d 1116, 1126 (Utah 1980) ("When the State has granted general welfare power to local governments, those governments have independent authority . . . to pass ordinances which are reasonably and appropriately related to the objectives of that power, i.e., providing for the public safety, health, morals, and welfare.").

impose an obligation on sign owners to follow the Ordinance's requirements. And anyone failing to meet this obligation is subject to sanctions by Draper City.[73] But this obligation is different than a duty arising under tort that is owed to private individuals. The question before us then is whether we may adopt the Ordinance as a standard of care and thereby impose an independent tort duty upon a sign owner to private individuals when the Ordinance does not expressly do so.

¶44 To answer this question, we generally look to section 286 of the Restatement (Second) of Torts for a list of "circumstances under which it is appropriate for a court to adopt a statutory standard of conduct as that of a reasonable person and to impose a tort duty to act toward a person in accordance with that standard."[74] Section 286 provides:

> The court may adopt as the standard of conduct of a reasonable [person] the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> 
> (a) to protect a class of persons which includes the one whose interest is invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect the particular interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.[75]

We also look to section 288 of the Restatement for further guidance on the "conditions under which courts generally will not impose a

---

[73] *See* DRAPER, UTAH, ORDINANCE § 9-26-070(d) (2003) (stating that any "person, firm or corporation" that violates the Ordinance is "guilty of a Class B misdemeanor"); *id.* § 9-26-050(H)(5) (2011) ("The City shall be entitled to recover all costs incurred, including attorney's fees, in the enforcement of actions under this chapter . . . .").

[74] *Rollins v. Petersen*, 813 P.2d 1156, 1163 (Utah 1991), *overruled on other grounds by Scott v. Universal Sales, Inc.*, 2015 UT 64, 356 P.3d 1172.

[75] RESTATEMENT (SECOND) OF TORTS § 286 (AM. LAW INST. 1965).

tort duty to act in accordance with a legislative standard."[76] That section provides:

> The court will not adopt as the standard of conduct of a reasonable [person] the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively
>> (a) to protect the interests of the state or any subdivision of it as such, or
>> (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or
>> (c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or
>> (d) to protect a class of persons other than the one whose interests are invaded, or
>> (e) to protect another interest than the one invaded, or
>> (f) to protect against other harm than that which has resulted, or
>> (g) to protect against any other hazards than that from which the harm has resulted.[77]

Together, we use these lists as "guidelines" in determining when we will adopt an ordinance as the standard of care and therefore impose a tort duty.[78]

¶45 As evidenced in both lists, we specifically focus on whether the purpose of the statute or ordinance was to protect the plaintiff at hand from the type of injury he or she has suffered. In other words, before a statute or ordinance "can be used as a basis for imposing a tort duty . . . , we must be persuaded that the *purpose* of the statute [or ordinance] was to protect a class of persons of which [the plaintiff in the case] is a member and to protect [such plaintiff] against injury or death resulting from" the kind of harm contemplated by the legislature.[79] And, as we described in *Hall v. Warren*,[80] the plaintiff

---

[76] *Rollins*, 813 P.2d at 1163.

[77] RESTATEMENT (SECOND) OF TORTS § 288.

[78] *Rollins*, 813 P.2d at 1163.

[79] *Id.* at 1164–65 (emphasis added); *see also Stembridge v. Nat'l Feeds Inc.*, No. 1:11CV49DAK, 2013 WL 5347455, at *8 (D. Utah

(Continued)

bears the burden of showing that the ordinance was *intended* to protect persons in the plaintiff's shoes from the type of harm that befell the plaintiff:

> a [defendant] may be subject to a duty of care imposed by a statute or ordinance . . . . [only when the plaintiff] show[s] (1) the existence of the statute or ordinance, (2) that the statute or ordinance was *intended* to protect the class of persons which includes the party, (3) that the protection is directed toward the type of harm which has in fact occurred as a result of the violation, and (4) that the violation of the ordinance or statute was the proximate cause of the injury complained of.[81]

Thus, when determining whether a tort duty should be imposed, we must look to the purpose and intention of the city council in enacting that ordinance.[82]

---

Sept. 23, 2013) ("Before a statute can be used to impose a tort duty, the statute's purpose must be to protect a class of persons of which the plaintiffs are members and to protect against the type of harm experienced.").

[80] 632 P.2d 848 (Utah 1981).

[81] *Id.* at 850 (emphasis added).

[82] Gateway argues that the Ordinance cannot form a duty because Utah generally views violations of ordinances as evidence of prima facie negligence, as opposed to evidence of negligence per se. But Gateway bypasses the first step. It is true that we have held that, "[a]s a general rule, violation of a standard of safety set by a statute or ordinance is prima facie evidence of negligence." *Id.*; *see also id.* at 850 n.1 (describing our departure from a negligence per se standard to a prima facie standard in most cases); *Child v. Gonda*, 972 P.2d 425, 432–33 (Utah 1998) (describing the difference between prima facie negligence and negligence per se). As we explained in *Rollins*, however, "before violation of a legislative standard will be held to be negligence per se (or prima facie evidence of negligence), the legislative standard must first be 'adopted by the court as defining the standard of conduct of a reasonable [person].'" 813 P.2d at 1164 n.4 (alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 288B). This means that "[t]he question here presented is not whether violation of a safety statute is negligence per se or prima facie evidence of negligence, but rather the

(Continued)

¶46 "In order to assess the legislative purposes of a statute, we begin with the language of the statute."[83] Indeed, we have held that "[t]he best evidence of the legislature's intent is the plain language of the statute itself."[84] When looking at the plain language, "[w]e presume that the legislature used each word advisedly," and deem "all omissions to be purposeful."[85] We therefore begin our analysis with the language of the Ordinance.

¶47 The Ordinance provides that it was enacted "to protect and promote the health, safety and welfare of City residents and businesses by regulating the design, construction, and installation of signs in a content neutral manner that does not favor any type of speech over another."[86] In order to "protect the safety and welfare of the people of the City," the Ordinance prohibits any sign that "constitutes a hazard to safety or health by reason of inadequate installation, maintenance or dilapidation"[87] and requires all signs to be "maintained in good and safe structural condition, [and] in compliance with all building and electrical codes."[88] The Ordinance also contains thirteen "objectives" the council sought to achieve through the enactment, most of which deal with providing "signs that are well designed and pleasing in appearance," "enhanc[ing] the economic strength of the City," and "protect[ing] from visual clutter."[89] Two objectives address safety specifically: one broadly

---

preliminary question of whether the legislative standard imposes a duty recognizable in tort as the standard of a reasonable person." *Id.* So it is only after a statute or ordinance is adopted by the court as the standard of conduct of a reasonable person, thereby imposing a duty recognizable in tort, that a court will then determine whether a violation thereof constitutes prima facie evidence of negligence or negligence per se.

[83] *State v. Outzen*, 2017 UT 30, ¶ 22, 408 P.3d 334.

[84] *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (alteration in original) (citation omitted).

[85] *Id.* (alteration in original) (citation omitted).

[86] DRAPER, UTAH, ORDINANCE § 9-26-010 (2011).

[87] *Id*. § 9-14-090(a) (1996).

[88] *Id*. § 9-14-070(c)(1)(iii) (1996).

[89] *Id*. § 9-26-010(1)–(13) (2011).

states an objective of the Ordinance is "to promote public safety"[90]; the other provides that the Ordinance seeks to "minimize light pollution, glare, visual obstructions, distraction, and traffic and safety hazards with the free flow of travel and activity for vehicles and pedestrians."[91]

¶48 The Colosimos argue that the phrases "City residents" and "people of the City" used in the Ordinance illustrate that the Draper City Council intended to protect a broad class of people that includes any "resident" of the city, even trespassers and wrongdoers. But, standing alone, these general phrases do not demonstrate that the Ordinance was meant to protect trespassers. They merely indicate that the Ordinance was meant to protect the public at large, not a specific class of people. And when an ordinance provides that its purpose is to protect the public at large, without further reference to specific members within the public, a court generally cannot deduce a particular class of people the legislature was intending to protect and therefore should not impose a tort duty.[92] We therefore cannot

---

[90] *Id.* § 9-26-010(12) (2011).

[91] *Id.* § 9-26-010(8) (2011).

[92] *Blackburn Ltd. P'ship v. Paul*, 90 A.3d 464, 478 (Md. 2014) ("[T]he finding of a statutory duty . . . must be premised on the statute being targeted toward a protected class, and not merely the public at large.").

The Colosimos argue that we have upheld statutory tort duties in safety statutes that apply to the public at large. For support, they rely on *Torrie v. Weber County*, 2013 UT 48, 309 P.3d 216. But the statute at issue in *Torrie* was considerably different than the Ordinance. *See id.* ¶ 11. There, the statute contained an express provision establishing a tort duty to third parties. *Id.* (stating that we had "previously determined in *Day v. State ex rel Utah Department of Public Safety*[, 1999 UT 46, ¶ 14, 980 P.2d 1171,] that a law enforcement officer engaged in a high speed pursuit of a suspect owes a statutory duty of care to innocent third parties" and quoting language from Utah Code section 41-6a-212, which expressly provides that an "operator of an authorized emergency vehicle" has "the duty to act as a reasonably prudent emergency vehicle operator"). Here, the Ordinance contains no language suggesting the Draper City Council intended to create a tort duty. Thus, we are asked to determine whether the city council implicitly meant to create a duty through the Ordinance. And, in the absence

(Continued)

say that the purpose of the Ordinance was to protect trespassers such as A.C.

¶49 The Colosimos also take issue with the court of appeals' decision to apply strict construction to the Ordinance's language. In its opinion below, the court of appeals rejected the Colosimos' argument of an independent duty under the Ordinance primarily based on a common-law rule of statutory construction—that a court should construe strictly statutes in derogation of the common law.[93] Although the court acknowledged that the Utah Legislature has expressly stated that this common-law rule "does not apply to the Utah Code,"[94] the court held that the rule does apply when "interpreting ordinances."[95] Operating under this rule of construction, the court determined that an ordinance must "explicitly 'extend or modify the common-law rule of the nonliability of landowner to trespassers'" to create an independent statutory duty to a trespasser.[96] And because the Ordinance did not explicitly extend or modify the common law in this respect, the court concluded that the Ordinance could not be read to override the common-law principle of nonliability to trespassers.[97]

¶50 The Colosimos argue that the court erred in its decision by imposing "an erroneous new standard that ordinances must be construed 'strictly.'" They argue that the court of appeals should have applied standard rules of construction in this case. Conversely, Gateway argues that the court of appeals did not create a new standard but simply restated the common-law standard articulated by Utah courts in prior zoning ordinance cases. The parties raise an

---

of an express provision establishing a duty, we generally require an ordinance or statute to specify a particular class of plaintiffs in order to impose a tort duty upon a party. *See Rollins*, 813 P.2d at 1163–64.

[93] *Colosimo*, 2016 UT App 195, ¶ 20.

[94] *See* UTAH CODE § 68-3-2(1) ("The rule of the common law that a statute in derogation of the common law is to be strictly construed does not apply to the Utah Code.").

[95] *Colosimo*, 2016 UT App 195, ¶ 21.

[96] *Id.* ¶ 26 (quoting *Wells v. Henry W. Kuhs Realty Co.*, 269 S.W.2d 761, 767 (Mo. 1954)).

[97] *Id.*

important question as to whether the statutory rule of strict construction applies to local government ordinances in derogation of the common law, as opposed to state statutes in similar circumstances. But we need not answer this question at this time, because even applying *standard* rules of statutory construction to the Ordinance, we cannot say the city council intended to create a duty to trespassers.

¶51 Under standard rules of statutory construction, "we first examine the plain language of an ordinance," taking care to read it in a manner that "render[s] all parts thereof relevant and meaningful."[98] In doing so, "[w]e 'presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning.'"[99] "But we do not interpret the 'plain meaning' of a statutory term in isolation. Our task, instead, is to determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)."[100] As discussed above, the plain language of the Ordinance itself does not show that A.C. was a member of a class the Draper City Council intended to protect by enacting the Ordinance. The Ordinance merely states that it was meant to protect the "public safety" of the "residents of the City." While the word "resident" arguably could include trespassers when read in isolation, such an intent is unlikely when read in context. For example, the vast majority of the Ordinance's language deals with regulating the physical dimensions of signs within the city for the express purpose of providing "signs that are well designed and pleasing in appearance," "enhance[ing] the economic strength of the City," and "protect[ing] from visual clutter."[101] This suggests that the "residents" the Ordinance contemplated were primarily sign owners, business owners, and common citizens. And, when dealing with public safety, the Ordinance's language generally speaks only of preventing "traffic hazards," thereby indicating that "residents"

---

[98] *Jackson v. Mateus*, 2003 UT 18, ¶ 21, 70 P.3d 78 (citation omitted).

[99] *Whitney v. Div. of Juvenile Justice Servs.*, 2012 UT 12, ¶ 10, 274 P.3d 906 (citation omitted).

[100] *Olsen v. Eagle Mtn. City*, 2011 UT 10, ¶ 12, 248 P.3d 465.

[101] DRAPER, UTAH, ORDINANCE § 9-26-010(1)–(13)(2011).

also includes those operating vehicles on city roads.[102] In contrast, the Ordinance contains no reference to trespassers or wrongdoers and fails to mention anything about roofs or those who might be traversing thereon. So these statements, when read in conjunction with the language of the Ordinance as a whole, do not show the city council intended to protect trespassers. Thus, even under standard rules of statutory construction, the Ordinance does not support an independent duty in this case.

¶52 Because the plain language of the Ordinance does not show that the city council intended to protect trespassers—the class of persons of which A.C. was a member—we decline to adopt the Ordinance as the standard of care in this case. We therefore affirm the court of appeals' holding that the Ordinance did not impose an independent duty upon Gateway to protect A.C. from the harm he suffered.

**Conclusion**

¶53 We hold that Gateway did not owe A.C. a duty under the common law. The Colosimos, who bore the burden on summary judgment of providing affirmative evidence, failed to show that a genuine issue of material fact existed as to whether constant trespassing occurred on Gateway's rooftop or that Gateway knew or had reason to know of the electrified metal flashing on the roof. We also hold that Gateway did not owe A.C. a duty under the Ordinance. The plain language of the Ordinance does not show that A.C. was a member of the class the Ordinance was meant to protect. We therefore cannot adopt the Ordinance as the standard of care in this case. Accordingly, we affirm the court of appeals' decision.

---

[102] *See, e.g., id* § 9-26-010(8) (2011) (providing that its purpose is to "minimize light pollution, glare, visual obstructions, distraction, and traffic and safety hazards with the free flow of travel and activity for vehicles and pedestrians"); *id.* § 9-26-060(G)(2) (2011) (in regards to "Illumination Requirements," providing that "[n]either direct nor reflected light from any source shall create a traffic hazard"); *id.* § 9-26-060(H)(4)(i) (2011) (in regards to "Standards For Permitted Sign Types," providing that "[f]reestanding and monument signs shall be placed in a manner so as not to interfere with traffic in any way, confuse drivers, or present any traffic hazard").